In Re Estate of L. S. Coffin.

Fort Dodge Portland Cement Corporation, Appellee, v. Carrie Rutledge, Administratrix, Appellant.

NEW TRIAL: Withdrawal of Attorney as Unavoidable Casualty. The dismissal of an action because of the withdrawal by coun-sel of his appearance, without giving his client due, timely, and reasonable notice of his intention to withdraw, may con-stitute such "unavoidable casualty and misfortune" as to justify the court in setting aside the dismissal. So held where the only warning ever given by the attorney to his client was to the effect that, if arrangements were not made as to his fees and expenses in case of trial, he would "feel" justified in with-drawing.

*Appeal from Webster District Court.*—Edward M. McCall, Judge.

October 2, 1920.

Upon the withdrawal of counsel for the claimant, the claim of the Portland Cement Corporation was dismissed by the court. On application by that corporation, the dismissal was vacated, and the claim reinstated. Therefore, the administratrix appeals.—*Affirmed.*

*Kenyon, Kelleher & Hanson,* for appellant.

*B. J. Cavanaugh,* for appellee.

Salinger, J.—I. The Fort Dodge Portland Cement Cor-

poration, hereinafter spoken of as the corporation, held the note of L. S. Coffin, now deceased. It was given for stock bought in that corporation by Coffin. On his decease, a claim based on this note was duly filed, and the administratrix refused to approve the same. The corporation placed the note for collection with the Commercial Liquidation Company, and on a contingent fee of 10 per cent. In July, 1915, the Liquidation Company sent the note to one Bryant, a practicing attorney at Fort Dodge. He was to receive a contingent fee of 6 2/3 per cent. He testifies (apparently without dispute) that this fee was to be for *collection only*. He adds:-

"I do not know that I ever believed the Cement Corporation would pay any more money for collection than under the contract with the Commercial Liquidation Company."

Bryant made no complaint as to fees, until about January, 1917. Thus matters remained on the contingent basis for almost two years. When the matter was reached for hearing, the counsel for the claimant withdrew, and, as said, thereupon the court dismissed the claim. The question is whether it erred in vacating the dismissal and reinstating the claim. It is asserted for the action of the trial court that, under the provisions of Code Section 4091, it was not justified in granting said relief, because the evidence shows that claimant had not met with "unavoidable casualty or misfortune preventing the party from prosecuting or defending."

The exact position of the appellant is that there is no evidence that any such casualty or misfortune existed, and that neither plea nor evidence claims or shows that any fraud or irregularity practiced on the applicant prevented it from prosecuting its claim. The appellee contends the evidence shows casualty and misfortune, such as is intended by this statute provision.

II. We think it unnecessary to give extended consideration to much that is stressed in the arguments. Suppose it be the fact that claimant was not indifferent, but was earnestly desiring to prosecute its claim to a successful end.

That will not entitle it to have the dismissal set aside and the claim reinstated, if its attorneys were justified in withdrawing, and exercised such right in a proper manner. If the withdrawal was wholly due to the fault and negligence of the client, he may not be relieved from the consequences of his own fault. That is elementary.

Was there such fault? It is undisputed that the contingent fee was *for collection only*. It was not intended to cover preparation for trial. Much less was it intended to cover a long trial, with chances strong against success. If it had been intended that the contingent fee should cover all that might be necessary to bring about "collection," the agent of plaintiff with whom Bryant made the contingent fee arrangement would not have felt bound to send money to cover expense of interviewing and subpoenaing witnesses. We hold it was mutually understood at all times that the 6 2/3 per cent was the compensation for collection without suit. That being so, the attorney did no wrong in asking —nay, demanding—some per diem fee arrangement for preparing for and conducting a trial. No attention was paid to repeated demands. The Liquidation Company evaded responding. The corporation declined to make the arrangement asked; declined to go beyond said contingent fee. This justified withdrawing.

### 2-a

The remaining question is whether the right to withdraw was properly exercised. Claimant asserts it was not. In effect, it contends, first, that no notice was given that there *would* be a withdrawal; that the notification was confined to statements that, if proper fee arrangements were not made, the attorneys would feel justified in withdrawing.

The right to withdraw was not properly exercised, unless there was due and reasonable warning. On no conceivable provocation may an attorney withdraw his appearance, without advising that that is his intention at such time as gives reasonable opportunity for the client to make a substitution. If timely notice was not given, if, indeed, no notice that counsel *would* withdraw was ever given, we are relieved from

considering whether the client could have saved himself
harmless from the withdrawal. If not advised that there
would be a withdrawal, except by a statement that it had
already been made, a dismissal resulting from such with-
drawal would warrant the court in setting aside such dis-
missal. Such a situation would amount to a preventing of
the litigant from prosecuting his cause, and would so be
within the statute. The first question, then, is not whether
timely warning was given, but whether warning was given
at all.

Was there notice that counsel would withdraw? In one
sense, there was. But that was notice that counsel would
withdraw unless money to get witnesses was furnished by
a stated time. But it was furnished in time, and so this
particular notice is out of the case.

What other notice was there? Mr. Bryant testifies that
he saw the president of the corporation "very shortly prior
to the time we withdrew. I think it was about April 10th.
I was on my way to take a train, stopped, and had a few
words with him on that matter, told him the situation, and
suggested that he go and see Mr. Joyce, and make some ar-
rangements with him, because I had only a few seconds to
talk." Again: "I simply told Nicholson that we felt we
couldn't go into the trial of a case of that kind on a con-
tingent fee basis." This, of course, did not advise that there
would be a withdrawal. What other notice there is, is by
letter. It is highly questionable whether any letter other
than the one in which it was advised that there had already
been a withdrawal, dealt with a withdrawal in case a per
diem arrangement was not made. The only letter earlier
than the one announcing that withdrawal had already taken
place is the one of date April 17th. In that, Bryant wrote
the Commercial Liquidation Company:

"We must know what to depend upon in the way of trial
fees other than the contingent fee offered, and the money
necessary for expense of witnesses and incidentals of trial.
If some satisfactory result is not reached by the time the
case is called for trial, * * * I feel that we cannot as-

sume the risk of trying the case, furnishing expense money and depending upon securing a verdict * * * for our remuneration. So if nothing satisfactory in the way of payment is assured before going to trial, we shall feel justified in withdrawing our appearance in the case."

It may well be claimed that this deals with a withdrawal, if expense money is not furnished. But assume that it is not so limited, yet it states no more than that counsel will, if a per diem arrangement be not made, "feel justified in withdrawing our appearance in the case." In the letter advising that the withdrawal had taken place, and had resulted in dismissal, the statement was not stronger than that the treatment of counsel was such that "we felt justified in withdrawing our appearance." There is nothing more, excepting that, in the letter advising that the case had been dismissed, there is a claim that "Mr. Joyce and myself informed Mr. Nicholson that we would not continue in the case." It will hardly be claimed that this self-serving statement in this letter, made after the dismissal had taken place, proves that advance notice was given that there would be a withdrawal of appearance. It is quite evident the client did not understand there was such advance notice. The president of the corporation claims that, within two days before the dismissal, he had endeavored to get in touch with Mr. Bryant, and that the president thought, if the case were tried, it would be in the latter part of the week. The letter of April 16th, written by the Liquidation Company to the corporation, indicates plainly that it is not understood by the writer there would be a withdrawal; for the corporation is told that, if it did not desire to make an effort to obtain witnesses, to notify Bryant, so that there might be a dismissal "when the case comes up." Put it at its strongest for the appellant, and the first time there was a flat statement as to withdrawing, it was made in the letter announcing the withdrawal had already taken place, by the statement that what had been done made counsel feel that they were justified in withdrawing, and "our withdrawal is final." At no time did the warning go beyond an argumentative dec-

laration that withdrawal was justified, and that counsel felt it was. Men do not always do what they are justified in doing, even if they feel that they are justified. The statement that one feels thus about it is not a statement that the feeling will be followed to action.

The appellant relies upon *Andres & Co. v. Schlueter*, 140 Iowa 389. The case is not available to her, because it has the very thing that is lacking on this record. In the *Andres* case, the attorney advised the agent of the client that the attorney would not further appear for the client, and, on subsequently receiving a telegram and letter from the client with reference to this, the attorney wrote the client, on September 14th, that the case was set down for peremptory call on September 19, 1907. And he wrote:

"Your wire and letter received. In reply will say that I cannot further appear for you in cases pending here as I have not been paid for services rendered and there is more than $500 due me and I see no prospect of being paid. I therefore cannot give time or pay out expenses without some hope of being paid. * * * The case of Andres & Company against you is assigned for trial next Thursday. I have written [your agent in Chicago] that I will not appear in it. * * * You will, therefore, understand that if you desire an attorney here you will have to get some other attorney than myself."

The difficulty with the case at bar is that, while arguments were submitted, claimed to prove (and grant, if you please, proving) that withdrawal was thought justified, there never was a statement even to the effect that counsel would withdraw, and that others must be employed.

We cannot hold that, in these circumstances, it was error to hold that the claimant had made a case within the statute.—*Affirmed.*

WEAVER, C. J., EVANS and PRESTON, JJ., concur.