### JACKSON v. TEXAS EMPLOYERS' INS. ASS'N. (No. 2147.)

(Court of Civil Appeals of Texas. Amarillo. May 23, 1923. Rehearing Denied June 27, 1923.)

Master and servant ⊕══373—Disease from exposure to rains held compensable as "injury" "in course of employment" though caused by act of God; "personal injury."

A truck driver's incapacity from disease resulting from exposure to rains while on a hauling trip on open prairies for his employer, who provided no shelter, *held* compensable under Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82, defining the term "injury," or "personal injury," as damage or harm to the physical structure of the body or disease naturally resulting therefrom, and providing that the term "injuries sustained in the course of employment" shall not include injuries caused by act of God, unless the employee's duties subject him to a greater hazard than the general public, but shall include injuries of every kind having to do with and originating in the work.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Course of Employment; Injury; Personal Injury.]

Appeal from Wichita County Court; R. O. Kenley, Judge.

Action under the Workmen's Compensation Act by J. B. Jackson against the Texas Employers' Insurance Association for compensation claimed in an application rejected by the State Industrial Board. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Arch Dawson, of Wichita Falls, for appellant.

Lawther, Pope & Leachman, of Dallas, for appellee.

HALL, C. J. Appellant, Jackson, a truck driver, sued appellee, Insurance Association, under the Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts., 5246—1 to 5246—91), to recover damages alleged to have resulted to him, and the appeal is from the action of the county court of Wichita county in sustaining a general demurrer to his petition. He alleges that his employer was a subscriber under the Compensation Act, and that the defendant was the insurer; that he was sent out as a truck driver to do some hauling upon a trip which would require several days, and while out the first day on an open prairie, with no shelter available and without shelter provided by his truck, he was caught in a severe rainstorm; that at night he went to the place where his employer had instructed him to spend the night, and where sleeping quarters would be provided; that he found at said place no provision had been made for him, and he was forced to sleep under an open shed; that during the night another severe rain came up, and as a result of being soaked on both occasions he had a severe cold the next morning; that during the following day, as he was returning with his loaded truck over muddy roads, and while warm and perspiring, in his efforts to manage his truck under such conditions, and while weakened from the previous exposure, he was caught in a third rain, which soaked his clothing, and because of such wettings and exposure he developed a severe case of pneumonia, together with the serious swelling of one of the large veins of his leg, by reason of which he was confined to a hospital for a considerable time, and was totally incapacitated for work for more than two months, and partially incapacitated for several more months. He alleges full compliance with the law; that the State Industrial Board rejected his application for compensation; that in accordance with law he gave notice, and has filed this suit. He contends, under several propositions, that the injuries alleged are within the provisions of the Texas Compensation Law; that they arose in the course of his employment, and that his incapacity was the direct and natural result thereof, and developed within a reasonable time; that his injuries were not caused by the act of God; that they arose while he was engaged in the performance of his duties, which subjected him to greater hazard than ordinarily applies to the general public; and that the question of negligence is not applicable under the act.

V. S. C. S. art. 5246—82, in so far as it is applicable to this case is quoted as follows:

"The term 'injury' or 'personal injury' as used in this Act shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as result therefrom. The term 'injuries sustained in the course of employment,' as used in this Act, shall not include: (1) An injury caused by the act of God, unless the employee is at the time engaged in the performance of duties that subject him to a greater hazard from the act of God responsible for the injury than ordinarily applies to the general public, * * *

---

⊕══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere."

So far as we have been able to learn subdivision 1, supra, referring to injuries caused by the act of God, is not incorporated in the acts of any other jurisdiction, but the Corpus Juris treatise upon Workmen's Compensation Acts, issued by the American Law Book Company, on page 77, in considering the cases of this character, at section 67, states the rule as follows:

"The cause of the injury must be a risk or exposure incidental to the employment and not common to the general public, regardless of the nature or the fact of their employment or the risk of being common to the general public, the employee must have been exposed to it in a greater degree than any other persons by reason of his employment. So where injury results from exposure to weather conditions the exposure of the employee by reason of his employment, must be greater than that of other persons in that locality."

Injuries due to climatic conditions attributable to the act of God have been passed upon by the Galveston court in Southern Surety Co. et al. v. Nelson, 223 S. W. 298, and Southern Surety Co. v. Stubbs, 199 S. W. 343. The Nelson Case was reversed upon questions foreign to the present inquiry, and writ of error was refused by the Committee of Judges in the Stubbs Case. In both cases the claimants were relatives of employees upon a dredgeboat in Galveston Bay, and were drowned during a storm upon the Texas coast during the month of August, 1915, in an effort to protect the boat, which was capsized as a result of the storm. While the decision to some extent turns upon the provisions of the surety company's policies, Graves, J., in the Stubbs Case, quotes from Middleton v. Texas Power & Light Co., 108 Tex. 104, 185 S. W. 559, as follows, where Phillips, Chief Justice, is discussing the constitutionality and purpose of the act:

"Its general purpose is to work an important change in the law in regard to the liability of employers for personal injuries to their employees, or for death resulting from such injuries, and the compensation afforded therefor to employees or their beneficiaries. * * * This compensation, fixed by the act, on the basis of the employee's average weekly wages, accrues to him absolutely upon his suffering any personal injury in the course of his employment, which incapacitates him from earning full wages for as long a period as one week, or to his representatives or beneficiaries, in the event of his death from the injury, whether or not due to the negligence of the employer or any of his servants or agents. * * *"

After quoting the court's finding of fact, showing that Stubbs was drowned as a result of the boat being capsized by the storm, Judge Graves said:

"In the face of the fact findings already recited it seems to us to be splitting hairs to say that Stubbs was not acting 'in the course of his employment,' for such is the exact language of our compensation statute. What does that expression mean?"

He then quotes from Larke v. John Hancock Mutual Life Insurance Co., 90 Conn. 303, 97 Atl. 320, L. R. A. 1916E, 584, to sustain his position, and says:

"Stubbs was living upon the dredgeboat, and at all times under and subject to the orders of its captain, and the storm had not only created an emergency which required the efforts of all employees to keep it afloat, but had produced a situation permitting of nothing else; in other words, it was a Hobson's choice for those poor fellows so caught upon that boat, and Stubbs could have done nothing else than follow the primal instinct of self-preservation by helping to keep the boat above the seas."

In the Nelson Case, supra, which, as stated, is a companion case, Chief Justice Pleasants said:

"It is further urged that the judgment should be reversed, because the death of Adolph Nelson was caused by an act of God, and therefore appellants are not liable to his beneficiaries upon the policies sued on in this case, which were issued under the provisions of the Workmen's Compensation Act. This question was decided adversely to appellant in the case of Surety Co. v. Stubbs, 199 S. W. 343," etc.

After an investigation of numerous authorities we feel constrained to disagree with learned counsel for appellant in his legal conclusion that Jackson's injuries were not caused by the act of God, as the term "act of God" is construed in cases arising under Workmen's Compensation Acts, where the issue of negligence does not enter. It is said in volume 1 Honnold on Workmen's Compensation, § 118, note 85:

"As a general rule, injuries which are suffered from so-called acts of God, such as sunstroke, freezing, lightning, etc., do not arise out of the employment of injured employees, for the reason that such casualties are risks which the whole citizenry takes. Where, however, the risk of the employee for injuries of this sort is clearly greater than that of the average person in the same community, then such special exposure to the danger causes the accident, if it occurs, to arise out of the employment."

The facts in the Larke Case, supra, show that Larke was working for an insurance company, soliciting insurance and collecting premiums; that while traveling over his route during the month of February he covered from 15 to 20 miles. The day was extremely cold, and in the course of his busi-

ness made about 50 calls, going in and out of heated buildings; that when he returned home at 2 p. m. it was found that his nose and eyes were red, and on the following afternoon a physician diagnosed his case as frostbite. As a direct result of that condition erysipelas developed the next day. Without quoting at length from the illuminating discussion and copious citation of authorities by Judge Wheeler, we quote in part as follows:

"Unless the conditions under which Larke pursued his employment exposed him to the danger of frostbite, and this exposure was peculiar to his employment, and not shared by the ordinary person, no causal connection between the frostbite and the employment can be found, if the employment brings with it no greater exposure to injurious results from natural causes, and neither contributes to produce these nor to aggravate their effect, as from lightning, or severe heat or cold, than those to which persons generally in that locality, whether so employed or not, are equally exposed, there is no causal connection between the employment and the injury. But where the employment brings a greater exposure, and injury results, the injury does arise out of the employment. Turning to the finding, we think it presents a clear case of an employee injured as a result of a greater exposure to the elements than persons in that locality are ordinarily subjected."

In the case of Reid et al. v. Automatic Electric Washer Co., 189 Iowa, 964, 179 N. W. 323, it appears that Reid was an employee in the company's factory. About 5 o'clock in the afternoon a severe windstorm blew down a part of the wall of the building, while Reid was endeavoring to close the windows on that side of the building to keep out the wind. Reid's dependents filed claim with the arbitration committee, which was disallowed. In reversing and remanding the finding, Salinger, Justice, said:

"No distinction should be based on the fact that one injury was caused by the act of God in creating a windstorm, and another due to the act of God in creating lightning; nor do I deem the naked fact that injury was caused by the act of God to be controlling, and nothing in Griffith v. Cole militates against a recovery in the case before us. That case distinctly holds that death from being struck by lightning may be compensable. The test is not whether the injury was caused by an act of God, but is whether the one injured was by his employment specially endangered by the act of God, be it lightning or windstorm. This decedent was more exposed to such injury than mankind generally. If an approaching storm seemed threatening, it was his duty to close windows that might keep him in the path of the storm after his fellow employees had left the building and gotten out of the path of the storm. I base my concurrence on the nature of the employment being one that forced the employee to be specially subject to the danger from certain acts of God."

By his petition in the instant case, Jackson shows that he was out on a hauling trip for several days; was caught out upon the prairies in a severe rainstorm; that the truck which his employer had provided had no shelter to protect him under such conditions, and that he was not able to secure sleeping quarters where his employer had informed him provision was made for that purpose, and he was required to sleep under an open shed, where he was again subjected to a severe wetting; that the next day, while trying to perform his duties, driving his truck along the muddy road, while perspiring and hot, another rainstorm caught him. We think these facts, as alleged, presented a good cause of action. The authorities in other jurisdictions are not harmonious, even in cases presenting similar facts where the damage results from weather conditions as is shown by the notes in L. R. A. 1916A, 23, L. R. A. 1916E, 584, and L. R. A. 1918F, 921.

The appellee contends that appellant's injuries do not come within the Workmen's Compensation Act because they are not the result of an accident. Appellee's brief quotes at length from Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556, and from the Workmen's Compensation Act itself, where the words, "accidental injuries," "industrial accident," etc., occur, in support of its contention. In reply to this contention it is significant that section 82 of article 5246, supra, in defining injury and personal injury, does not contain the word "accident," but seems to studiously avoid it, saying that injury or personal injury means "damage" or "harm" to the physical structure of the body, or such disease or infection as naturally result therefrom, and according to section 4 the damage or harm which is compensable embraces every kind and character of injury having to do with and originating in the work, etc. If the Texas act limited the appellant's right to recovery to accidental injuries, the appellee's contention would be sound; but, even in jurisdictions where accidental injuries are the statutory basis for compensation, the decisions are not uniform, where the damage results from climatic conditions and vis major.

Merrill v. Penasco Lumber Co., 27 N. M. 632, 204 Pac. 72, is a case where the claimant's husband, a teamster, was working in the woods, and while on his wagon was killed by a tree, which was blown down by a storm. The court said:

"Without attempting to lay down an absolute rule, for each case must be determined according to its own facts, the authorities seem to hold that, if the deceased, by reason of his employment, was exposed to a risk of injury by a storm or other action of the elements greater than that to which the public was subject, or

his employment necessarily accentuated the natural hazard, the injury arose out of his employment"—citing State v. District Court, 129 Minn. 502, 153 N. W. 119, L. R. A. 1916A, 344; 28 R. C. L. 796, and notes to Central Illinois Public Service Co. v. Industrial Com., 13 A. L. R. 974; McManaman's Case, 224 Mass. 554, 113 N. E. 287.

The effect of V. S. C. S. art 5246—82, quoted supra, is to bar Jackson's right to recover if his injury is caused by the act of God, unless he was at the time engaged in the performance of duties that subjected him to a greater hazard from the act of God, responsible for his injuries, than ordinarily applies to the general public. As stated, there is a want of harmony in cases of this character; but we think the weight of authority sustains his right to recover.

State ex rel. Virginia & Rainy Lake v. District Court, St. Louis County, 138 Minn. 131, 164 N. W. 585, L. R. A. 1918C, 116 is one construing the Minnesota act (Gen. St. 1913, § 8203), in which the word "accident" is defined as:

"An unexpected or unforeseen event, happening suddenly and violently, with or without human fault."

The employee was awarded compensation because, while engaged in chopping wood and building a road, his thumb was frozen, necessitating its amputation. The court affirmed an award in his favor, holding that a fair construction of the statutory definition does not exclude freezing, and that it was a personal injury caused by accident, within the meaning of the act. In the course of the opinion it is said that freezing was a personal injury within the meaning of the act, and that it was obvious that it was an unexpected and unforeseen event.

In Ellingson Lumber Co. v. Industrial Commission, 168 Wis. 227, 169 N. W. 568, it appears that a woodsman misunderstood his orders, and in working hard to catch up with his work his feet perspired freely and were frozen while on the way home. The court held that the injury was proximately caused by accident, saying:

"If the [claimant], while engaged in his work, had wet his feet by stepping into an open spring, and the freezing had resulted therefrom, it could scarcely be claimed that the injury was not proximately caused by accident."

Days v. Trimmer & Sons, 176 App. Div. 124, 162 N. Y. Supp. 603, is a case in which an employee recovered compensation for having his toes and fingers frostbitten while carrying coal from a wagon into a customer's house. An employee, while rolling logs in the woods on an exceptionally cold day, had his toes frozen, and it was held that he suffered an accidental injury. Linck v. Millard, 4 N. Y. St. Dept. Rep. 385. An employee who froze his fingers while harvesting ice when the temperature was 30 degrees below zero was held to have suffered an accidental injury. Cole v. Callahan & Sperry, 4 N. Y. St. Dept Rep. 348. To the same effect is the holding in the following cases, where employees suffered from frostbite: Shanahan v. Minor, 2 Conn C. D. 622; Rainey v. Tunnel Coal Co., Id. 646; Young v. Northern California Power Co., 12 N. C. C. A., note 310; Doherty v. Employers' Liability Assur. Corporation, 12 N. C. C. A. 812; Gillis v. Maryland Casualty Co., 3 Mass. W. C. C. 307.

Where an employee was killed in a cyclone, while working in a plant where ammonia fumes and scalding steam contributed to his injuries, the court, in holding that the death was due to the risk of the employment, said:

"We believe the reasonable rule to be that if deceased, by reason of his employment, was exposed to a risk of being injured by a storm which was greater than the risk to which the public in that vicinity was subject, or if his employment necessarily accentuated the natural hazard from the storm, which increased hazard contributed to the injury, it was an injury arising out of the employment, although unexpected and unusual. An injury, to come within the Compensation Act, * * * need not be an anticipated one, nor, in general, need it be one peculiar to the particular employment in which one is engaged at the time. While the risk arising from the action of the elements, such as a cyclone, is such a risk as all people of the same locality are subjected to, independent of employment, yet the circumstances of a particular employment may make the danger of receiving a particular injury through such storm an exceptional risk, and one to which the public generally is not subjected. Such injury may be then said to arise out of the employment. In the instant case, while the risk of being injured by this cyclone may be said to have been a risk common to the public in the vicinity of such cyclone, regardless of employment, yet if there was in the circumstances of Kilgore's employment an unusual risk or danger of injury from the destruction by storm of the building in which he was employed, such risk may be said to be incident to the employment of the deceased, and the injury received to arise out of such employment. Deceased, at the time the storm broke, was engaged in assisting and directing the closing up of the plant of defendant in error. These duties took him among the steam pipes and ammonia coils, which subjected him to an unusual risk of being injured from escaping steam and ammonia fumes, should the building be destroyed by storm. The evidence shows that the ammonia fumes and scalding steam contributed most largely to the injuries which caused his death. We are therefore of the opinion that there were in the circumstances of the employment of the deceased risks of being injured by the storm not common to the public in that vicinity, and the circuit court therefore erred in setting aside the award." Central Ill.,

Pub. Serv. Co. v. Industrial Com., 291 Ill. 256, 126 N. E. 144, 13 A. L. R. 967.

In the case of Chiulla de Luca v. Board of Park Com. of Hartford, 94 Conn. 7, 107 Atl. 611, an employee was raking leaves in the city park. During a thunderstorm of considerable violence he took shelter under a tree. Lightning struck the tree and he was killed. No protection had been provided for him in case of storms. The court held that he was subject to a greater hazard than that experienced by the community at large, and continued:

"A personal injury to an employee, which is sustained while he is doing what he was employed to do and as a proximate result thereof, arises out of and in the course of his employment. An injury which is the natural and necessary incident of one's employment is proximately caused by such employment, as it is also when the employment carries with it a greater exposure to the injury sustained than the exposure to which persons generally in that locality are subjected."

Numerous cases are cited in 1 Schneider, Workmen's Comp. Law, § 343, holding to the same effect, though there is an occasional discordant note.

Because we think the petition stated a good cause of action, the judgment is reversed, and the cause remanded.