**MARYLAND CASUALTY CO. v. CLARK.**

No. 3569.

Court of Civil Appeals of Texas. Beaumont.

March 28, 1940.

Rehearing Denied May 29, 1940.

Chilton O'Brien and Smith, Smith & Boyd, all of Beaumont, for appellant.

Barnes & Barnes, of Beaumont, and Glenn Faver, of Jasper, for appellee.

COMBS, Justice.

This is a workmen's compensation insurance case. Appellee, Johnnie Clark, recovered judgment for total permanent disability in a lump sum of $2,999, he having limited his claim by his pleadings to that amount.

While employed by the Texas Company at its Port Arthur refinery appellee took ill with pneumonia and spent seventy-two days in the hospital. Section of a rib was removed to permit drainage of pus from the pleural cavity; adhesions and other damage to the lungs and chest resulted. This suit is predicated upon the theory that the pneumonia developed from an injury to the lungs resulting from doing fast, heavy work in an over-heated, poorly ventilated room.

The evidence presents a rather close question as to whether or not the jury's findings of total permanent disability have sufficient support. It can not be questioned, however, that plaintiff does have considerable permanent disability as a result of the pneumonia, and there is evidence that his disability is total permanent.

The more vital question is did the pneumonia result from an injury? Briefly summarized, the evidence relied upon to show accidental injury, was: On the day of the alleged injury, February 4, 1938, plaintiff worked in the grease room, where the various types of greases produced at the refinery were put into steel drums. The room was large, about 112 ft. long by 29 ft. in width, with a high ceiling. Nine large grease kettles were suspended above. The bottoms of the kettles came down through the ceiling to within about 8 ft. of the floor. The grease was heated by electricity to various temperatures, depending upon the kind of grease, to make it fluid enough to flow into the drums. The proof was that the temperature of the grease ranged from about 110 degrees to as high as 190 degrees Fahrenheit. There is some dispute as to the extent to which the room was ventilated, plaintiff's evidence being to the effect that most of the openings, windows and doors from the grease room, opened out into a larger room, the grease room being an inside room. Defendant's evidence tended to show that the room was well ventilated. Plaintiff's job required him to handle the heavy drums of grease weighing about 450 pounds each, by tilting them over and rolling them on their rim a few feet to a conveyor which carried them from the room. It was heavy fast work. On the occasion in question, at between one and two o'clock P. M. plaintiff became nauseated and remarked to a fellow employee that he was about to faint. He was pale at the time. He walked out into the open at but only a few minutes

to quitting time and remained in the open air until time to quit. He went to the shower room and took his bath and went home. He did not go to bed but developed a fever that night; he remained up until the evening of the second day when he took to his bed and summoned a physician. He testified that at the time he became ill while working he had severe pains in his head, chest, lungs and stomach and that these pains never left him from that time on until he took to his bed. The physician who treated him testified that when he called to see plaintiff he was suffering with a typical case of influenza; that on the following day it developed into pneumonia and he ordered plaintiff to the hospital. Pneumonia resulted in pus forming in the pleural cavity which necessitated drainage. A rib recision was performed and plaintiff remained in the hospital seventy-two days. The physician testified that plaintiff at no time stated to him that he had become overheated or suffered any injury while on his job.

An expert medical witness, Dr. J. J. McGrath, testified for plaintiff that from examinations made in the course of treating the plaintiff after he left the hospital, that plaintiff is totally and permanently incapacitated. He stated in response to hypothetical questions that one working in a hot room, particularly if the atmosphere is dry, may suffer irritation of the tissues of the lungs and air passages which condition will provide a ready field for the development of pneumonia germs and that pneumonia may result from such causes. He stated further that one person may be more subject to such injury than others, depending upon various factors such as his bodily resistance, condition of his health at that time, etc.

Plaintiff offered no proof of the actual temperature in the room in which he worked, other than the temperature of the kettles of grease suspended from the ceiling as above mentioned. He and another employee did testify that it was "very hot" in the room, and the ventilation poor. The defendant offered testimony of temperature tests made within the room a year later and under conditions of outside temperature comparable to the temperature the preceding February when plaintiff claimed to have been injured. The temperatures taken at various times of the day ranged from 57 degrees up to 80 degrees Fahrenheit. Therefore, no thermometer reading so taken indicated any excessive heat in the room. It was also shown that a number of employees from time to time worked in the grease room— from five to fifteen or twenty depending upon the amount of grease being run. There was no showing that any other employee had ever suffered any injury or illness from the alleged excessive heat nor was any proof offered of any noxious gases or irritating substances of any kind in the air of the grease room.

## Opinion

A number of assignments are presented complaining of various technical errors. However, the controlling question—one which goes to the merits of the case—is whether or not the evidence supports the jury's findings that plaintiff's incapacity resulted from an "injury" within the purview of the Workmen's Compensation Law. Vernon's Ann.Civ.Stat. Art. 8309. It is not questioned that plaintiff's condition of incapacity resulted directly from pneumonia. The theory upon which he seeks recovery is: That the fast heavy work in the overheated grease room produced an irritated and inflamed condition of the lungs and air passages which condition was a producing cause of the pneumonia.

The injury insured against by the Workmen's Compensation Law is defined by the statute to mean "damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom". Vernon's Ann.Civ.Stat. Art. 8309. Plaintiff's medical testimony satisfactorily established that an inflamed or congested condition of the lungs and air passages provides a ready field for the development of pneumonia germs, and that pneumonia may and frequently does result from such condition. The medical testimony also established that conditions of extreme heat, particularly when accompanied by a dry condition of the air, may inflame the mucous membrane of the lungs and air passages of one subjected to such conditions. The precise question here is did the evidence satisfactorily establish that plaintiff sustained an inflamed and congested condition of his lungs and air passages from the conditions to which he was subjected in the course of his work?

█ It is of course true as contended by the plaintiff, that "damage or harm" to the internal organs of the body constituting

the injury, may be established by proof of symptoms and circumstances which warrant the reasonable inference that the injury occurred. Thus, it has been held that proof of heat stroke or heat prostration received in the course of employment satisfactorily establishes compensable injury without other proof of damage or harm to the physical structure of the body. Hebert v. New Amsterdam Cas. Co., Tex.Com. App., 1 S.W.2d ·608; Texas Employers' Ins. Ass'n v. Moore, Tex.Civ.App., 279 S.W. 516; O'Pry v. Security Union Cas. Co., Tex.Com.App., 1 S.W.2d 590. In the heat stroke cases the inference of injury, i. e., "damage or harm to the physical structure of the body", is an inference clearly supported by the known changes brought about in the organs of the body by heat stroke or heat prostration. Hence proof of heat stroke is proof of injury. But there is no contention here that plaintiff suffered heat stroke or heat prostration, but only that he received an injury to the lungs and air passages. The plaintiff was therefore under the burden of establishing the injury by other proof.

As we view the record the sole proof of such "injury or harm to the physical structure" of plaintiff's lungs and air passages was the testimony that the grease room in which he worked was "very hot"; that he was doing very fast heavy work; that he became ill and nauseated while so working and suffered with severe pains in his chest continously from the time he ceased working to the onset of pneumonia. There was no proof that the heat of the room and the conditions under which plaintiff worked were . so severe that injury to the lungs and air passages can be inferred from such fact alone. Mere proof that an overheated room and dry air will irritate the lung passages was not proof that plaintiff suffered injury from such cause. There was no proof that the air in the room was dry or that the temperature was sufficiently extreme to cause injury. No other employee working in the same room suffered injury from such cause. Nor did mere proof of illness and pains in the chest establish the injury in the absence of proof of some noxious gas or irritating substances in the air of the room or of sufficiently extreme heat to account for the condition. When first examined by a physician the plaintiff was suffering from influenza and the symptoms which he described may well have been the onset of that disease—the result of germ infection not resulting in any way from an injury.

The plaintiff relies strongly on the case of Maryland Cas. Co. v. Rogers, Tex.Civ.App., 86 S.W.2d 867, writ refused, as supporting his judgment in this case. In that case recovery was allowed for death resulting from pneumonia. But it was there shown that the pneumonia was contracted through inhalation of dirt and foreign particles while the deceased was grinding some unusually dirty grain. The "damage or harm to the physical structure" of the lungs was clearly established. The air in which the deceased worked was so filled with dirt that one could see a person only a few feet away. The deceased coughed and spat blood while on the job; the onset of the pneumonia followed immediately and in natural sequence to its fatal termination. The medical testimony was to the effect that the pneumonia resulted from the inflamed and congested condition of the lungs produced by the inhalation of sand and dirt. Thus the proof clearly established the injury and the "disease or infection"—pneumonia —which developed as a natural result of it. As we view the record before us there was not such proof of injury as in the Rogers case. At most the proof here leaves it purely speculative and problematical as to whether the plaintiff received any injury whatever. On the evidence we think it is just as reasonable to presume that his influenza and pneumonia resulted purely from natural causes. At most the conditions under which he worked may have produced a favorable condition for development of flu and pneumonia. But that of itself is not sufficient to warrant recovery. Jackson v. Texas Employers Ins. Ass'n, Tex.Civ.App., 253 S.W. 348. Proof of conditions which are merely conducive to the development of the disability producing disease is not proof of an injury compensable under the terms of the Workmen's Compensation Law. The statute does not provide health insurance. The compensation which it allows is limited to death or disability resulting from injury.

From what we have said it follows that the case must be reversed. We do not render judgment but remand the case for a new trial in order that the plaintiff may have an opportunity for further develop-

894

ing the proof concerning his alleged injury.

Reversed and remanded.

WALKER, Chief Justice (dissenting).

I dissent from the conclusion of my brethren that the evidence is insufficient to support the verdict of the jury. But as our judgment on that proposition is final and not subject to review by the Supreme Court, it would serve no useful purpose for me to summarize the evidence, which, in my judgment, supports the jury's verdict.