## GUTHRIE v. TEXAS EMPLOYERS' INS. ASS'N.

### No. 5762.

Court of Civil Appeals of Texas. Amarillo.

Jan. 13, 1947.

Rehearing Denied Feb. 10, 1947.

Cunningham & Boling, of Lubbock, for appellant.

Underwood, Johnson, Dooley & Wilson, of Amarillo, for appellee.

STOKES, Justice.

This is a compensation case instituted by the appellant to recover of the appellee compensation for total and permanent disability alleged to have been occasioned by an accident suffered by him on December 2, 1944, while engaged in the duties of his employment by the Postex Cotton Mill located at Post, in Garza County, of which the appellee was the compensation insurance carrier. A jury was empaneled to try the case but at the close of the testimony, upon motion of the appellee, the trial judge instructed the jury to return a verdict in its favor and, upon the return of such a verdict, judgment was entered denying appellant any recovery.

Appellant presents a number of assignments of error, in which he contends the judgment should be reversed but we do not deem it necessary to discuss them in detail. His principal contentions are, first, that the court erred in giving to the jury a peremptory instruction in favor of the appellee because the evidence showed he received an injury to the physical structure of his body on December 2, 1944, from which he contracted tuberculosis as a natural and direct result, and, secondly, because the court erred in sustaining appellee's objection to a hypothetical question asked of an expert witness by appellant concerning the natural and

probable consequences of one being subjected to the conditions under which appellant was working at the time he alleges he received the injury.

The evidence showed that on Saturday, December 2, 1944, appellant was working as a clean-up hand in the weave shop of the Postex Mills; that the shop was heated by steam and about eleven o'clock in the morning appellant became too hot; that he became sick at his stomach, vomited and went outside to cool off. He remained in the open air for about thirty minutes and then returned and continued working until noon. The temperature of the room was not shown but appellant testified it seemed to him it was unusually hot and another employee testified that he himself came very near getting too hot. He said the steam heating apparatus got out of control and that he requested the foreman to adjust it but he declined to do so. It is further shown that appellant's nose bled; that he felt weak and sick at his stomach; that he began coughing and sneezing; and that he developed what he thought was a common cold. The mill shut down at noon, as was its custom, and appellant went home where he continued to cough through the afternoon and night. During the night his nose bled profusely and his weakened condition continued indefinitely. He worked most of the time during the month of December but was ill and confined to his bed four days during the month. He said he continued to suffer ill effects from his experience in becoming too hot on the occasion mentioned and he was unable to get rid of his cold. In February, 1945, he suspected he had tuberculosis and after undergoing an examination he was admitted to the State Sanitorium for Tubercular Patients, located near San Angelo, where he remained for about three months. The testimony showed conclusively that appellant was a tubercular but at the time of the trial he was what is termed an "arrested case." Prior to December 2, 1944, his health was apparently good and he engaged steadily in manual labor. It was further shown that the room in which appellant worked was dusty and the atmosphere contained some minute particles of wool or cotton, but there was no testimony to the effect that any of the dust or particles of textile materials were discharged from his throat or lungs by coughing or otherwise, nor was it shown the lungs or bronchial tubes were in any manner affected by breathing the atmosphere containing them.

Appellant contends his total and permanent disability resulted directly from his experience above related while in the course of his employment; that his becoming too hot and going outside to cool off resulted in his taking cold which ultimately developed into tuberculosis, and that the tuberculosis caused his total and permanent incapacity.

■■ In his pleadings, the appellant alleged he became overheated and suffered from heat exhaustion or heat stroke and that he, therefore, suffered an accident such as is contemplated by the Texas Workmen's Compensation Law, Art. 8309, Vernon's R. C.S., but the testimony did not establish these allegations nor was it sufficient to establish an injury to the physical structure of the body such as is contemplated by the Statute. It is now well established by many decisions of our courts that in order to recover under the compensation law, actual physical injury, internal or external, must be shown in a proper way before an inference legally may be drawn that the final result in respect to which compensation is claimed is attributable to an injury originating in the employment. Southern Casualty Co. v. Flores, Tex.Com.App., 1 S.W. 2d 260; Texas Employers' Ins. Ass'n v. Jackson, Tex.Com.App., 265 S.W. 1027; Hebert v. New Amsterdam Casualty Company, Tex.Com.App., 1 S.W.2d 608; Lumbermen's Mut. Casualty Company v. Vaughn, Tex.Civ.App., 174 S.W.2d 1001; Maryland Casualty Company v. Clark, Tex. Civ.App., 140 S.W.2d 890.

Appellant asserts that the instant case is on all fours with the case of American General Ins. Co. v. Ariola, Tex.Civ.App., 187 S.W.2d 585, in which it was held that the evidence met the demands of the law and justified the jury in finding that Louis Ariola sustained personal injuries to the physical structure of his body and that such injuries were accidental and were the producing cause of his death. In that case, it was

shown that Louis Ariola was employed as a ship scraper or painter's helper. His duties consisted of cleaning and scraping the rust, scales and other foreign matter from ships to prepare clean surfaces for painting. On the occasion involved, he came out from where he was working and immediately began coughing and spitting up something that looked like steel dust which was accompanied by streaks of blood. When he returned home, he was seized with hard, severe spells of coughing and after some hours he coughed up a clot of ship filings, rust and scrapings. A physician testified that the effect of the steel filings and scrapings would cause coughing and that if a person got steel filings in his respiratory tract it would give him a cough as soon as he got them; that it was not necessary in order to develop an infection that would cause pneumonia for the particles to go into the lungs but infection might start in the bronchial tubes and the patient develop pneumonia by extension. Thus, it will be seen there is a wide distinction between the facts revealed in the Ariola case and those in the case at bar and, that Louis Ariola received an injury to the physical structure of his body, is apparent. In the instant case, it is not shown nor contended that appellant was injured in any way by becoming too hot while engaged in his work in the weave room. His only contention is that his becoming too hot set in motion a chain of circumstances which ultimately developed tuberculosis and that the injury and damage which he suffered was from the tuberculosis. This is not sufficient as a ground of recovery under the Workmen's Compensation Law. The case of Maryland Casualty Company v. Clark, supra, is very similar to the instant case. There, as here, the only proof of injury or harm to the physical structure of the body claimed by the plaintiff was that in the grease room of the plant in which he was working it became very hot; that he was doing fast and heavy work; that he became ill and nauseated while working and suffered severe pains in his chest continuously from the time he ceased working to the onset of pneumonia, which caused his incapacity. There was no proof that the heat of the room and conditions under which he worked were so severe that his lungs or air passages were damaged or injured but the contention was that his becoming too hot while working in the grease room resulted in irritation of the lungs and air passages and brought on influenza and ultimately developed pneumonia. In passing upon the contentions, the Court of Civil Appeals said [140 S.W. 2d 893]: "Proof of conditions which are merely conducive to the development of the disability, producing disease is not proof of an injury compensable under the terms of the Workmen's Compensation Law. The Statute does not provide health insurance. The compensation which it allows is limited to death or disability resulting from injury." In other words, actual physical injury, internal or external, must be shown in a proper way before recovery can be had, regardless of what might have developed from the conditions under which the claimant was performing his labor. To the same effect is the case of Texas Employers' Insurance Association v. Jackson, supra [265 S.W. 1029]. In that case, the claimant was exposed to severe weather conditions from which he developed a cold and pneumonia resulted. Judge Bishop, speaking for the Commission of Appeals, said: "While the disease was the natural result of getting wet, the mere getting wet was not a 'damage or harm to the physical structure of the body,' and, unless it was, it could not be said to be an 'injury' or 'personal injury', for which compensation is allowed by the statute."

▮▮▮ Appellant relies strongly upon the case of Maryland Casualty Company v. Rogers, Tex.Civ.App., 86 S.W.2d 867, in which the claimant brought suit under the Workmen's Compensation Law, for physical incapacity which resulted from pneumonia contracted as a natural consequence of injury to his lungs by reason of having breathed dust and foreign particles while engaged in grinding bundled feed stuff. We are unable to agree with appellant that the cases are analogous. In the Rogers case, it was shown that the deceased was employed in a feed store; that his duties consisted of operating a feed grinder in the back end of the store building; that the feed stuff being ground by him was exceedingly dirty and the process of grinding

caused a great cloud of dust to remain around the mill, so much so that a man was not visible in the room more than five or six feet away. It was shown that those operating the mill had to leave it frequently to get their breaths; that the deceased was covered with dirt and foreign matter, was coughing violently and spitting up black substance; that he continued to spit up mud and black substances after he went home at night; that his eyes were red and swollen, and he complained of his chest hurting; that he slept little, beating his chest through the night; spit up blood from the time he got home and developed a chill and temperature. He grew worse and vomited blood a few days later and within one week from the time he engaged in grinding the feed, he died of pneumonia. It was shown by the medical testimony that any foreign substance drawn into the delicate tissues of the lungs or bronchial tubes will inflame them and that if it cannot be expelled by coughing, it will set up inflammation, which is followed by pneumonia. Thus, it plainly appeared that the breathing of the excess amount of dust and dirt injured the lungs and from the injury thus received while engaged in his employment, pneumonia developed as a natural consequence. The instant case differs from the Rogers case in that appellant here wholly failed to produce any evidence whatever that his working in the overheated weave shop caused any damage or injury to his lungs or any other part of his body. Appellant asserts that, according to the testimony, his working in the room while it was overheated resulted in his taking cold and his resisting power was thereby reduced, thus opening the way for latent tubercular germs to become active, and that the chain of events, that is, his becoming too hot, cooling off and taking cold and developing tuberculosis, caused injury to his body, which was compensable. As has been said by the courts in a number of cases, the Compensation Insurance Statute does not provide health insurance. It is well known that any kind of physical labor is calculated to produce fatigue and reduce the resisting power of the system. When its resistance is reduced, the system is more susceptible to the onslaught of disease, and if appellant's contention in this respect should be upheld, then compensation could be recovered for every disease with which a laborer becomes afflicted by reason of his resisting power being reduced, even though it was reduced as a natural consequence of the physical labor which he was engaged to perform. The statute does not cover so broad a field. It limits recovery to those injuries which damage or harm the physical structure of the body, and such diseases or infections as naturally result therefrom. If there has been no injury to the physical structure of the body, then no recovery can be had for any disease that might develop. The testimony in this case fails to show any sort of an injury sustained by the appellant in the course of his employment, as contemplated by the compensation law of this state, and the court below, therefore, properly instructed a verdict for the appellee.

The next contention made by appellant is that the court erred in refusing to permit Dr. Edwards to testify that a person suffering from overheat would catch cold if he were exposed to cold air. The hypothetical question asked Dr. Edwards by appellant's counsel was: "Suppose I got overheated to such an extent that I suffered from overheat or heat exhaustion and went out into the cold air?" At this point, appellee's counsel objected to the question upon the ground that the testimony did not show appellant suffered from heat exhaustion, and the objection was sustained. We find no error in this ruling of the court. No witness testified that appellant suffered from overheat or heat exhaustion and it is elementary that a hypothetical question must be based upon the conditions shown by the testimony in the case.

We have carefully examined all of the contentions presented by appellant and, in our opinion, no error is revealed by any of them. The judgment of the court below will, therefore, be affirmed.

BOYCE, J., not sitting.