**MARYLAND CASUALTY CO. v. ROGERS et al.**

**No. 4472.**

Court of Civil Appeals of Texas. Amarillo.

Sept. 23, 1935.

Rehearing Denied Oct. 28, 1935.

868

Simpson, Dorenfield, Foster & Fullingim, of Amarillo, for appellant.

Caldwell, Gillen, Francis & Gallagher, of Dallas, for appellees.

MARTIN, Justice.

Appellees recovered judgment against appellant under the Texas Workmen's Compensation Law (Vernon's Ann. Civ. St. art. 8306 et seq.). Their pleadings are not here questioned, nor is their evidence, except in the respects hereafter discussed. The general nature of this case will sufficiently appear in the copied issues submitted by the court and answers of the jury to these, together with such of the evidence set out as is necessary to properly appraise and pass on the legal points involved on this appeal.

Of the issues submitted to the jury, only the following, with the respective answers thereto, are necessary to here reproduce:

"Special Issue No. 1. Do you find from a preponderance of the evidence that James W. Rogers inhaled dust and foreign particles into his lungs on or about January 19th, 1934, while working for Allison Coal and Grain Company? Answer yes or no. Answer Yes.

"Special Issue No. 2. Do you find from a preponderance of the evidence that James W. Rogers suffered an injury to his lungs by the inhalation of dust and foreign particles on or about January 19th, 1934? Answer yes or no. Answer Yes.

"By the term 'injury,' as used in this charge, is meant 'damage or harm to the physical structure of the body and such disease or infection as naturally results therefrom.'

"Special issue No. 3. Do you find from a preponderance of the evidence that said injury to the lungs of James W. Rogers, if

any, was an accidental injury? Answer yes or no. Answer Yes.

"By the term 'accidental injury,' as used in this issue is meant one that happens out of the ordinary, is unusual, unexpected, and can be traced to a definite time, place and cause.

"Special Issue No. 4. Do you find from a preponderance of the evidence that the injury to his lungs, if any, that James W. Rogers received on or about January 19th, 1934, resulted in the pneumonia from which he died? Answer yes or no. Answer Yes."

The substance and effect of appellant's various propositions are: (1) That there is no evidence that deceased received an "injury," under the said definition of such term; (2) that, if injured, such injury was not shown to be accidental; and (3) that no causal connection was shown to exist between such injury, if any, and his subsequent death.

We are indebted to both parties for able briefs. These enable us to shorten this opinion to a discussion and recitation of such evidence as in our opinion controls the disposition of the questions raised by appellant, in the light of the definitions of "injury" and "accidental injury," supra, apparently acquiesced in by both parties as correct.

The following is a brief résumé of the evidence: The deceased, James W. Rogers, was an employee of a feed store located in Paducah, Cottle county, Tex. His duties consisted of waiting on customers, making deliveries, and occasionally operating a feed grinder, consisting of a hammer type mill located in the back end of such feed store; that such store building was of stone, about 15 feet wide, ventilated by two windows and a door; that on Friday, about January 19, 1934, in the course of his said employment, he assisted in grinding a large load of grain fodder known as higera; that such fodder had just been brought in by two farmers and was full of dirt, due to a sandstorm that had raged the day previous; this was described by one of the farmers as "the dirtiest he had ever seen"; that it took about two and one-half hours to grind it; that deceased during all that time worked at the sacker, shown to be the dustiest position of all; that the fodder was ground about as fine as corn meal; that during the grinding there was emitted a fog of dust and foreign particles, so much so that a man was not visible in the room more than five or six feet away; that witnesses had to leave frequently to get their breaths; that deceased was covered with dirt and foreign matter, was coughing violently, and spitting up a black substance; that he continued this spitting up mud or black substance after he got home that night; that his eyes were red and swollen, he coughed violently and complained of his chest hurting; slept little, beating his chest through the night; spit up "quite a bit of blood" from the time he got home Friday; had temperature Monday and a hard chill that night; grew worse, vomited up blood about Thursday, and died of pneumonia Friday night; that deceased was healthy previous to this; had not had any hurtful effect from similar work before; that there was a mild epidemic of pneumonia over the country at the time. Three doctors tetsified for appellees. We reproduce a portion of such testimony:

"Q. What are some of the causes of pneumonia, some of the exciting causes? A. Lowered vitality, exposure, or any irritant dust or anything that irritates the lungs.

"Q. Medical science recognizes that you may have pneumonia from inhalation of any foreign substances, doesn't it? A. It is the exciting factor or predisposing cause.

"Q. You could inhale coal dust and get pneumonia or any foreign particles you inhale could be the exciting cause? A. Yes, sir. * * *

"Q. What effect does it have on the lungs if you breathe foreign particles in there, chaff and dust, etc.? A. Any foreign substances or anything that is drawn into that delicate tissues, it is easily inflamed and is easily injured; if that can't be expelled by coughing, it sets up inflammation and that is followed by pneumonia germs or other germs that break down the tissues and from that you get the pneumonia; the injury to the lung structure lowers the resistance of that part and gives the germs that we all carry a fertile field to work.

"Q. What are some of the causes of pneumonia? A. There is a number of different causes, it usually follows inhalation where you breathe into your lungs various substances such as dust and chaff and coal dust, or any foreign matter; it very often follows after an operation where you have a general anaesthetic; the gas is irritating to the lung tissues and it will go down into the lungs and set up an infection; and there is other chemical sub-

stances that you can breathe that are irritating. * * *

"Q. State whether or not, in your opinion, the inhalation of this dust and foreign particles and chaff could reasonably and probably have caused the pneumonia from which he died? A. I think it would. * * I would say this, working under the conditions that was described and breathing the great quantity of that dust as he would have to breathe if he worked for that period of time, that a large amount of these foreign substances went into the lungs, it was bound to have injured a large portion of the lungs, and I would say that was the predisposing or exciting cause, and set up a fertile field for the germs to work."

A physician testified for appellant that when he examined deceased Tuesday morning he found only a congested condition of the lungs, and diagnosed his case as such, and the effect of other parts of his testimony was in substance that deceased died from pneumonia, a germ disease purely.

█ Plainly, a damage to the physical structure of the body need not necessarily be externally visible to come within the meaning of "injury," as that term is used in article 8309 of the Workmen's Compensation Law. (Vernon's Ann. Civ. St.) Naturally, symptoms are depended upon in large measure in cases of this character to prove injury to a hidden organ. Here we have violent coughing, spitting blood, and pains in the chest, almost immediately after the infliction of the alleged injury. This, together with the medical testimony already quoted, amply supported the jury's finding of an injury as reflected in special issue No. 2, supra. Travelers' Ins. Co. v. Smith et al. (Tex. Civ. App.) 266 S. W. 574; Great Atlantic & Pacific Tea Co. v. Sexton, 242 Ky. 266, 46 S.W.(2d) 87: Barron v. Texas Employers' Ins. Ass'n (Tex. Com. App.) 36 S. W.(2d) 464, 467; Texas Employers' Ins. Ass'n v. Sloan (Tex. Civ. App.) 36 S.W. (2d) 319; Texas Employers' Ins. Ass'n v. Jimenez (Tex. Civ. App.) 267 S. W. 752; 71 C. J. 579; 28 R. C. L. § 86.

█ Was such injury accidental? We quote: "In discussing the construction to be given to the word 'accident', as used in compensation statutes as denoting the kind of injury for which compensation may be had it has been said that no formula will precisely express the usage of the word cases, and that the word 'accident,' generally, does not have a settled legal meaning nor may

the meaning of the word as generally used in the compensation statutes be determined by any dictionary definition alone but as used in those acts the meaning of the word 'accident' is influenced by the provisions of the statute in which it is used as well as by the purpose for which the statute was enacted." 71 C. J. p. 563.

"The word 'accident,' as used in a compensation act requiring the injury compensated for to be by 'accident,' is usually held to be employed in its ordinary sense as meaning an unlooked-for and untoward event which is not expected or designed." 71 C. J. p. 566.

"By the term 'injury' is meant, not only an injury the means or cause of which is an accident, but also an injury which is itself an accident." Carroll v. Industrial Commission, 69 Colo. 473, 195 P. 1097, 1098, 19 A. L. R. 107.

█ The definition given in this case by the trial court was apparently a copy of one approved in a case where it was necessary to exclude occupational diseases, and is somewhat broader than necessary under the facts found here. In our opinion, however, the evidence was sufficient to meet its requirements and justify the finding made by the jury. True, the cause of the injury here was not purely an accident as if the roof had fallen in, etc. Such a narrow construction is at variance with the wholesome purpose of the law. If the injury was undesigned and unexpected, had its "origin in a risk connected with the employment," and is shown to have flowed immediately and directly from that source as a rational consequence, it is compensable. There may be compensable cases not covered by the above rule. It is not intended to be all-inclusive.

█ In this case the employee labored under unusual conditions. The bundle higera was the dirtiest the witness had ever seen. There was a mild epidemic of pneumonia. The employer could have but did not provide protective measures. The injury was unexpected and undesigned. It could be traced to a definite time, place, and cause. The evidence met the demands of the law. Authorities, supra. See, also, Maryland Casualty Co. v. Guzman (Tex. Civ. App.) 79 S.W.(2d) 330; Fidelity Union Cas. Co. v. Martin (Tex. Civ. App.) 45 S.W.(2d) 682; Southwestern Surety Ins. Co. v. Owens (Tex. Civ. App.) 198 S. W. 662, 664; Commercial Standard Ins. Co.

v. Noack (Tex. Civ. App.) 45 S.W.(2d) 798; Theago v. Royal Ind. Co. (Tex. Civ. App.) 70 S.W.(2d) 473; Houston Packing Co. v. Mason (Tex. Civ. App.) 286 S. W. 862; Leach v. Grangeville Highway District (Idaho) 41 P.(2d) 618; Brown's Case, 123 Me. 424, 123 A. 421, 60 A. L. R. 1293; Carroll v. Industrial Commission, 69 Colo. 473, 195 P. 1097, 19 A. L. R. 107; Steel Sales Corporation v. Industrial Commission, 293 Ill. 435, 127 N. E. 698, 14 A. L. R. 274; Cishowski v. Clayton Mfg. Co., 105 Conn. 651, 136 A. 472; Adams v. Lilbourn Grain Co., 226 Mo. App. 1030, 48 S.W.(2d) 147; Johnson v. La Bolt Oil Co. (S. D.) 252 N. W. 869.

■■ There must of course be a causal connection between the injury and subsequent death of the employee for the latter to be compensable. Here, there was sufficient evidence of an injury to the lungs, followed immediately by symptoms indicating a predisposition to pneumonia, which in fact resulted, death occurring therefrom in just one week from the time of the alleged injury. The cause set in motion on Friday operated continuously through a sequence of events, each flowing naturally from one to the other, eventuating in death the following Friday. This sufficiently supported the answer to special issue No. 4; supra. Georgia Cas. Co. v. Little (Tex. Civ. App.) 281 S. W. 1092; Maryland Cas. Co. v. Boverie (Tex. Civ. App.) 37 S.W. (2d) 310; Texas Employers' Ins. Ass'n v. Birdwell (Tex. Civ. App.) 39 S.W.(2d) 159; Texas Employers' Ins. Ass'n v. Clark (Tex. Civ. App.) 23 S.W.(2d) 405; Texas Indemnity Ins. Co. v. Preslar (Tex. Civ. App.) 298 S. W. 666; Texas Employers' Ins. Assn v. Sloan (Tex. Civ. App.) 36 S. W.(2d) 319, 320.

■ We quote: "We think that it is a matter of almost common knowledge that any serious injury to the human lungs predisposes those members to the disease of pneumonia; and frequently becomes the exciting and efficient cause of such disease; but whether such be a matter of common knowledge or not, the record in this case abundantly shows that any serious injury to the human lungs predisposes those members to pneumonia and becomes the exciting and efficient cause of that disease. By the word 'naturally,' as used in the statute, it is not meant that the disease which is shown to have attacked the victim of the accident is such disease as usually and or-dinarily follows the accident; but it was only meant that the injury or damage caused by the accident is shown to be such that it is natural for the disease to follow therefrom, considering human anatomy and the structural portions of the body in their relations to each other." Travelers' Ins. Co. v. Smith (Tex. Civ. App.) 266 S. W. 574, 576.

The judgment is affirmed.