## STANDARD ACC. INS. CO. v. ANDREASON.

### No. 11651.

Court of Civil Appeals of Texas. Galveston.

Oct. 26, 1944.

Rehearing Denied Nov. 16, 1944.

Kemper & Cramer, of Houston (John G. Cramer, of Houston, of counsel), for appellant.

Geo. W. Coltzer and Crawford & Borofsky, all of Galveston, for appellee.

**GRAVES, Justice.**

This appeal—in a suit for death benefits under the Workmen's Compensation Act of Texas, Vernon's Ann.Civ.St. art. 8306 et seq.—is from a $3398.94 lump-sum judgment, entered by the 56th District Court of Galveston County in favor of the appellee against the appellant, both in response to a jury's verdict on special issues submitted, and upon independent findings by the court itself on what it finds to have been "the undisputed evidence", the court having in its decree thus epitomized the controlling facts so found, to-wit: " * * * the jury having found as a fact that John F. Andreason sustained a personal injury on or about the first day of August, 1942; that such personal injury was an accidental injury; that such personal injury was sustained by the said John F. Andreason while working as an employee of Ray Meeker; that such personal injury sustained by the said John F. Andreason was sustained by him in the course of his employment with Ray Meeker; that said personal injury received by the said John F. Andreason on or about the first day of August, 1942, was the producing cause of his death; that sickness, illness, or disease, of the said John F. Andreason was not the sole cause of his death; that the ulcer existing in the stomach of John F. Andreason on and prior to the first day of August, 1942, would not have punctured the stomach wall and caused the death of the said John F. Andreason, unless he had sustained a personal injury."

Although presenting its contention under three points of law, in this court the appellant raises but a single question for review, which its brief thus condenses: " * * * the trial court erred, to the prejudice of this Appellant, in submitting this case to the jury, over a proper motion for an instructed verdict, and in refusing to render judgment for it, notwithstanding the jury's verdict."

In other words, since the appellee has only sought "to recover compensation for the death of John F. Andreason, resulting from an accidental injury sustained on the 1st day of August, 1942, while the said John F. Andreason, together with another employee of Ray Meeker, the assured, was carrying a large and heavy rug, and while straining and lifting same, sustained a rupture in his stomach, and as a result of which the said John F. Andreason died on the 21st day of September, 1942", the appellant correspondingly reduces its answer thereto to its quoted insistence that the evidence below was insufficient to raise a question of fact in appellee's favor on such claim, hence its duly presented motions made in the trial court either for peremptory instruction to, or in its favor notwithstanding the adverse verdict from, the jury, should have been granted.

With the task of this court so narrowed by the parties, it becomes necessary to determine only whether or not the evidence as a whole did raise issues of fact for the jury in appellee's favor.

■ In determining that question, the rule of law this court must follow is well settled, and has been thus, in substance, recently restated by our Supreme and other appellate courts: "In determining whether or not an instructed verdict should have been given, all testimony in the case must be considered in its most favorable light to the one against whom the instructed verdict is sought; conflicts will be disregarded, and every reasonable intendment deducible from the evidence must be indulged in his favor. Anglin v. Cisco Mortg. Loan Co., 135 Tex. 188, 141 S.W.2d 935; Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224." Lackey v. Moffett, 172 S.W.2d 715, 717.

After a painstaking review of the statement of facts, in the light of the quoted pronouncement, it seems clear to this court that such issues of fact were raised, hence that appellant's earnest contention throughout its briefs and arguments to the contrary, that the verdict and judgment in appellee's favor rested alone upon surmise, suspicion, conjecture, and other improper elements—having no more than, if as much as, a scintilla of admissible proof to support it—cannot be sustained; indeed, there seem to be sufficient direct facts testified to by appellee's witnesses to constitute a structure from which the jury's findings

in her favor were reasonable if not necessary inferences.

A brief resume of the more material of those indicated features is thus made:

(1) Dr. Mares, the family physician who attended the appellee's husband throughout his illness until his death, testified that when he examined the deceased immediately after his reported return from his trip to deliver the rug with the negro truck driver, Dee Cottom, he found a rupture in his stomach, which was a long slit-like hole therein, and not the ordinary punched-out type of hole that develops when the rupture results from the normal processes of a stomach ulcer; that such unusual type of rupture must have been caused by either strain or trauma, and that it was his matured opinion that this one had been brought about as the result of a strain; he reiterated at length his reasons for such findings, and added that the patient's final heart failure had likewise, in his opinion, been the result of such a rupture, followed by the patient's weakened condition from the operation he performed on him in the effort to save his life.

(2) The negro, Lee Rugley, who was a servant in the home of Mrs. McCoy, where —by all the testimony relating to that detail—the rug had been delivered on August 1 of 1942 by Mr. Andreason and the negro truck driver, Dee Cottom, testified that he personally saw Mr. Andreason take the rug from such truck and bring it in to Mrs. McCoy's house on his shoulder, assisted by Dee Cottom, up the steps into the room. It is true that Dee Cottom, as a witness, said that Mr. Andreason did not handle the rug at all, that he did it all, but that contradiction it was the jury's province to resolve, the truck driver's denial not having the effect of obliterating Rugley's positive statement that he saw Mr. Andreason carrying it; Rugley went further with such direct testimony by adding that, when he say Mr. Andreason coming up the steps with the rug on his shoulder, the old gentleman—he being then near 70 years of age—appeared to be nervous, was perspiring profusely, and looked as if he would fall, giving to him all the appearances of being in pain; that he sat down in a chair when he, Rugley, offered him one, holding his hand over his stomach.

No one testified to any circumstances from which a trauma from other causes, or circumstances, than that of such a strain from lifting the rug, could have existed; nor was there any evidence of any other strain or lifting on the part of Mr. Andreason, except as to that while so engaged at the McCoy house; wherefore, the proof was thus confined to the sole claim declared upon by the appellee as the basis for her suit.

(3) The appellee herself testified in material substance as follows: "That on the 1st day of August, 1942, her husband went to work at half past seven. That she saw him again about 4:30 or 5 o'clock when he came staggering in with his lunch box. That on this day he was in good condition and he was all right, never had been ill. He had never complained prior to that day; he had never been treated by a doctor for any kind of stomach trouble, and had never made any complaints, and that she had never seen him suffer from his stomach, or anything of that nature; that when she saw him that day he was coming in all doubled up and holding himself down here, indicating his stomach, and was dragging one leg. He could hardly walk. That she ran out and took his hat and helped him in, and that she called Dr. Mares, who came in about 20 or 25 minutes. The next morning he was moved to the hospital and was operated upon, then he was brought back home, and taken back to the hospital. That he was in the hospital until the 30th of August, then he was brought home and stayed until the 5th, and then was taken back to the hospital, and on the 21st he died."

 It is deemed unnecessary to undertake a further resume of the testimony, since what has been given is thought sufficient to support the holding herein made— that an issue of fact in appellee's favor was raised.

This testimony, when appraised as the quoted Supreme Court rule, supra, requires, goes further than to give rise to a mere speculation, conjecture, or unsupported guess, that a rupture might have been caused by such a strain as the appellee declared upon, within the meaning of such holdings as those in Houston Fire & Casualty Ins. Co. v. Biber, 146 S.W.2d 442, and many others like it, appellant relies upon; rather it brings this cause within the rules applied in cases like these, to-wit: Roland v. Employers' Casualty Co., 290 S.W. 895; Federal Underwriters v. Polson, 148 S.W. 2d 956; Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581; Texas Employers Ins. Ass'n v. Lovett, 19 S.W.2d 397; Brodtmann v. Zurich General Accident &

584

Liability Ins. Co., 5 Cir., 90 F.2d 1; Maryland Casualty Ins. Co. v. Rogers, 86 S.W.2d 867.

Further discussion is deemed unnecessary, since these conclusions determine the merits of the appeal; they require that the judgment of the trial court be affirmed; it will be so ordered.

Affirmed.