## TEXAS EMPLOYERS' INS. ASS'N v. WADE et al.

### No. 11805.

Court of Civil Appeals of Texas. Galveston. Oct. 24, 1946.

Rehearing Denied Nov. 14, 1946.

Fulbright, Crooker, Freeman & Bates, Newton Gresham and Sam H. Hood, all of Houston, for appellant.

Jimmy Phillips, of Angleton, and Helm & Jones, Shirley M. Helm and Albert P. Jones, all of Houston, for appellees.

MONTEITH, Chief Justice.

This is an appeal from a judgment in a workmen's compensation suit brought by appellees, Ettie Mae Wade et al., to set aside an award of the Industrial Accident Board denying compensation for the death of Henry G. Wade, which was alleged to have been caused from injuries sustained by him in the course of his employment with the Dow Chemical Company, who carried compensation insurance with appellant, Texas Employers' Insurance Association.

In answer to special issues submitted, a jury found, in substance, that the deceased had inhaled gas in the course of his employment with the Dow Chemical Company, which resulted in accidental injury which was the producing cause of his death; and that his death was not produced solely by disease or other conditions, as claimed by appellant. A lump sum settlement was found to be proper. Judgment was entered by the trial court in accordance with the verdict.

Appellant's motions for a directed verdict at the conclusion of all the evidence were overruled by the trial court.

Appellant contends, under appropriate points, that the evidence was insufficient to to show that the deceased sustained an accidental injury which was the producing cause of his death, and that his death was due to other causes which necessitated an operation which terminated fatally. It assigns error in the admission of certain evidence and in the refusal of the court to grant appellant a new trial because of the conduct of one of the jurors in failing to disclose pertinent facts sought to be elicited from him upon his voir dire examination.

The widow and minor son of Henry G. Wade were plaintiffs in the trial court and are appellees here.

The record shows that on April 12, 1944, deceased was employed as a painter by the Dow Chemical Company. He had worked for approximately a year at this employment and was ostensibly in good health when he left for his work on that date. His wife testified that when he returned from work to his home on that afternoon he was pale, that his eyes and lips were red, and that he stated to her that his lungs hurt him. She testified that he coughed and tried to vomit, but couldn't; that he continued to get worse, and that on the following morning he was taken to a hospital, where, upon an examination by physicians, his abdomen was found to be somewhat distended. An exploratory operation was performed for which a general anesthetic was given. He died on April 15, 1944.

On May 29, 1944, his body was exhumed and an autopsy was performed for the pur-

pose of determining the cause of his death. Dr. W. W. Coulter, who performed the autopsy, testified that the autopsy revealed edema and congestion of the lungs. He testified that he found no cancer of the rectum, and that a bladder condition was not the cause of Mr. Wade's death. He testified that an irritant gas could have been a contributory producing cause of the bronchial pneumonia from gas inhalations caused by lung congestion from which Mr. Wade was suffering, and that gas might kill a person or that it might simply irritate the lungs.

■ It is the established law of this state that " 'a damage to the physical structure of the body need not necessarily be externally visible to come within the meaning of "injury," as that term is used in Article 8309 of the Workmen's Compensation Law (Vernon's Ann.Civ.St.).' " (American General Ins. Co. v. Ariola et al., Tex.Civ.App., 187 S.W.2d 585, 587; Maryland Casualty Co. v. Rogers, Tex.Civ. App., 86 S.W.2d 867, and authorities there cited), and that "a disease contracted as the direct result of unusual conditions connected with the work and not as an ordinary or reasonably to be anticipated result of pursuing the same, should be considered as an accidental injury. Thus pneumonia caused by the inhalation of gas generated by an explosion has been held to be an accident." Barron v. Texas Employers' Insurance Association, Tex.Com. App., 36 S.W.2d 464, 467, and cases cited.

In this case it was shown that the deceased was in apparent good health when he left home on the morning of the day he was injured. The witness Monroe Muesse, a fellow employee of the deceased, testified that the chlorine gas in the plant where he was working was unusually strong on that afternoon and that it tended to choke those who came in contact with it and make them cough and cut off their breath; that about three o'clock in the afternoon Wade appeared to be ill and was coughing and that in response to his inquiry he had stated that the gas was about to get him and that he felt ill.

■ This evidence, taken in connection with the medical evidence above recited and the testimony of deceased's wife, we think, justified the jury in finding that Wade sustained personal injuries as alleged, and that such injuries were accidental and were the producing cause of his death.

Under its eighth point appellant contends that the court erred in permitting the appellee's witness, Monroe Muesse, to testify over its objection that, during the middle of the afternoon of April 12, 1944, he had asked the deceased what was the matter with him and that, in response to such question by the witness, the deceased had replied, "This gas is about to get me", for the alleged reason that such testimony was hearsay and was inadmissible as such.

■ This contention cannot be sustained for the reason that the evidence in question was, we think, admissible as part of the res gestae.

In the case of Texas Employers' Insurance Ass'n v. Shifflette, Tex.Civ.App., 91 S.W.2d 787, under a similar state of facts, the Dallas Court of Appeals in an exhaustive opinion has announced the rule that the question of the admission of evidence as a part of the res gestae must be determined in the first instance by the trial court. The court in its opinion held that while the determination of the admissibility of testimony under the res gestae rule ordinarily must stand upon its own particular facts, our courts have laid down the rule that a declaration sought to be introduced in evidence under the rule must be connected with and arise out of the transaction which is the subject matter of the inquiry, and must be either a part of the transaction or must have been made under such circumstances as to raise a reasonable presumption that the statement was a spontaneous utterance of thought created by or arising out of the transaction itself. 17 Tex.Jur., 618, par. 259, and authorities cited in notes. The court further held that the statement must not only be a spontaneous utterance of thought, created by or arising out of the transaction itself, but must be such as to preclude the idea of premeditation, and that the facts attending the statement must lead to the reasonable conclusion that the statement offered in

evidence was made under such circumstances that reason and reflection are not dominant but that the statement was made from impulse. 17 Tex.Jur., 620, par. 261, and authorities cited in notes. Two of the most important elements in connection with the admission of res gestae statements were held to be: "(a) Was the declarant suffering great pain at the time the statement was made? And (b) did death from the injury follow soon after making the statement?" Texas Employers' Ins. Ass'n v. Shifflette, Tex.Civ.App., 91 S.W.2d 787, 791; Western Union Tel. Co. v. Brown, Tex.Civ.App., 297 S.W. 267; International Travellers' Ass'n v. Griffing, Tex.Civ.App., 264 S.W. 263.

In the early case of International & G. N. Railway Co. v. Anderson, 82 Tex. 516, 17 S.W. 1039, 1040, 27 Am.St.Rep. 902, our Supreme Court held that: "Such [declarations] as are made under such circumstances as will raise a reasonable presumption that they are the spontaneous utterance of thoughts created by or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation or design [are admissible in evidence]."

In this case the reply from the deceased to the question of the witness, Muesse, that the gas was about to get him, appears to have been the spontaneous answer of the deceased to an inquiry as to his condition. There is, we think, no suggestion in the record that it resulted from premeditation or design.

Under its tenth point of appeal appellant contends that the trial court erred in not granting appellant a new trial because the juror, J. B. Fairchild, who participated in the verdict in the case, concealed material information on his voir dire examination by appellant's attorneys concerning his personal background, qualifications, interest and prejudice as a juror, which information, if revealed by the juror, would have caused appellant's attorneys to exercise a peremptory challenge against him.

J. B. Fairchild, a member of the jury panel from which the jury was drawn, was accepted by both appellant and appellees as one of the jurors to hear and try the facts in this case. He participated in the verdict by the jury upon which judgment was rendered for appellees.

The appellant's amended motion for a new trial was supported by an affidavit of one of its attorneys of record, Newton Gresham, to the effect that he was actively in charge of the trial of this cause; that in conducting such voir dire examination of the jurors, he inquired of all the members of the jury panel whether any of them, or their close relatives, had ever been a plaintiff in a damage suit, had had a claim for Workmen's Compensation benefits, had been involved in any industrial or other accidents, had made any claim for Workmen's Compensation benefits, or had been paid any sums of money for Workmen's Compensation benefits.

It was stipulated by the parties that the juror J. B. Fairchild had had three Workmen's Compensation claims:

That while in the employ of the Freeport Sulphur Company he had claimed that on May 1, 1941, a box had been dropped into some mud and had splattered mud into his right eye; that a claim had been made therefor and he had been paid therefor the sum of $37.16 as workmen's compensation benefits, and that the sum of $111.14 had been expended by the Texas Employers' Insurance Association, insurer in such instance, for medical care.

That while in the employ of the Dow Chemical Company in 1944, Fairchild had claimed to have been involved in an industrial accident in which he "got caustic in his right eye"; that the Texas Employers' Insurance Association had paid the sum of $211.70 for medical attention, and had paid him the sum of $97.14 in weekly workmen's compensation benefits, and $25 in settlement and compromise of his claim for compensation, which settlement was duly approved by the Industrial Accident Board.

That while in the employ of the Dow Chemical Company, Fairchild claimed to have been involved in an industrial accident on August 29, 1945, in which he claimed that he had received an injury to his right eye; that based upon this claim, Texas

Employers' Insurance Association had expended the sum of $42.48 for medical attention therefor.

That while in the employ of the Dow Chemical Company in October of 1945, Fairchild had claimed that he was involved in an industrial accident in which his right eye was injured, and that Texas Employers Insurance Association had expended the sum of $2 in connection with this claim.

It is undisputed that the juror did not reveal that he had had these compensation claims at the time appellant's attorney inquired about claims of this nature when conducting his voir dire examination of members of the jury panel.

In a hearing upon appellant's amended motion for new trial prior to the ruling of the court thereon, appellant's attorney, Newton Gresham, testified to the facts set out in his affidavit, which was attached to the motion. He testified that had these facts been known to him he would have exercised a peremptory challenge on this juror; that he did not know until after the verdict of the jury had been returned that Fairchild had had the claims above set forth, or any other claims; that while the claims in question were against the Texas Employers' Insurance Association, appellant here, so far as he knew, the records of such claims were not available at appellant's Freeport office; that the files which he had examined as a basis for the motion for a new trial, came from appellant's Dallas office, and that no effort was made during the trial of the case to check up on any juror or upon the truth of what any juror had said upon the voir dire examination, except the questions asked the jury on such examination.

On the hearing on the motion for a new trial Fairchild testified, in substance, that he was a member of the jury which tried this case; that the payments of compensation which had been made to him were made voluntarily; that his relations with the Insurance Company and with the Dow Chemical Company had been pleasant, and that he had made no mention of any claims by him as a compensation claimant in the jury room.

The trial court in overruling appellant's motion for a new trial found that the testimony of Newton Gresham was true and that the testimony of the witness Fairchild was reasonable.

Rule 226, Texas Rules of Civil Procedure, provides that before the parties or their attorneys begin the examination of the jurors whose names have thus been listed, the jurors shall take an oath that they will true answers give to all questions propounded to them concerning their qualifications as a juror.

In 39 American Jurisprudence, page 65, Section 45, it is stated:

"It seems generally agreed that when matters which might establish prejudice or work a disqualification of a juror are actually gone into upon the voir dire examination and false answers are given or deception is otherwise practiced, as the result of which a juror, although disqualified in fact, is accepted, the party misled or deceived thereby, upon discovering the fact of the juror's incompetency or disqualification after trial, may assert that fact as ground for and obtain a new trial, upon a proper showing of such facts, even though, it has been held, the bias or prejudice is not shown to have caused an unjust verdict; it is sufficient that a party, through no fault of his own, has been deprived of his constitutional statutory guaranty of a trial of his case before a fair and impartial jury. The fact that objection was not made to the juror or an exception saved is not controlling. Apparently no distinction is to be made between merely statutory disqualifications and those which affect the impartiality of the juror. Some courts indeed have declared that the constitutional right to an impartial jury would be infringed if a new trial were not granted where a juror testified falsely as to his impartiality, and the trial court may, on its own motion, during the trial term, grant a new trial upon this ground.

"The failure of a juror in a damage suit, when interrogated on this point on voir dire, to disclose the fact that he or some member of his family was, or has been involved in another action for damages,

or that a judgment for damages had been rendered against him or some member of his family in another action, will furnish grounds for setting aside the verdict and granting a new trial, when the falsity of his answers are discovered after trial."

In 31 American Jurisprudence, page 638, Section 108, it is stated: "Duty and Conduct of Juror.—Full knowledge of all material and relevant matters is essential to a fair and just exercise of the right to challenge either for cause or peremptorily, and it is the duty of a juror to make full and truthful answers to such questions as are asked him, neither falsely stating any fact nor concealing any material matter. If he falsely misrepresents his interest or situation, or conceals a material fact relevant to the controversy, he is guilty of misconduct, and such misconduct is prejudicial to the party, for it impairs his right to challenge. Such concealment or misstatement is punishable as contempt if its tendency and design are to obstruct the processes of justice, and the privilege from disclosure of the deliberations of a jury does not apply in the case of a juror who has procured his acceptance or retention as such by misrepresentation, even though it may also constitute the crime of perjury.

In the case of Gossett v. Jones, Tex.Civ. App., 123 S.W.2d 724, 726, this court had under consideration a case in which a juror, when questioned on voir dire examination, failed to disclose the fact that he was related to the appellee within a prohibited degree under Article 2134 of the Revised Civil Statutes of Texas. These facts were set up fully in an affidavit attached to appellant's motion for a new trial. This court, in reversing and remanding the cause for a new trial, held: "The record fails to disclose that appellants' counsel were negligent in failing to discover these facts, or that they failed to disclose them to the court immediately on making the discovery. Under the above facts, appellants' motion presented good grounds for a new trial. 26 Texas Jurisprudence, page 740, Sec. 173; Stringfellow v. State, 42 Tex. Cr.R. 588, 61 S.W. 719; Texas Pacific Railway Co. v. Elliott, 22 Tex.Civ.App. 31, 54 S.W. 410."

In the early case of Texas & Pacific Railway Co. v. Elliott, 22 Tex.Civ.App. 31, 54 S.W. 410, 411, one of the jurors failed to reveal that he was related within the third degree to appellant's wife, who was not a party to the suit but who would have benefited by a recovery by the plaintiff. In holding that the proposition presented reversible error, the court said: "The attorney for defendant believed that by remaining silent the juror intended to answer that he was not related to either party. The fact of relationship between the juror and plaintiff's wife is made to appear by affidavit attached to the motion for a new trial, and, further, that these facts first came to the knowledge of the defendant's attorney after the trial. It clearly appears that defendant's attorney was not guilty of any negligence in failing to discover these facts. The motion presented good grounds for a new trial, and the court erred in refusing to grant the same. McGehee v. Shafer, 9 Tex. 20, 24; Hanks v. State, 21 Tex. 526."

In the case of Gulf, C. & S. F. Ry. Co., v. Dickens, 54 Tex.Civ.App. 637, 118 S.W. 612, 615 (no writ applied for), error was assigned based upon the fact that one of the jurors who tried the case had a preconceived idea as to the rights of the party and was thus biased, and that on voir dire examination he had testified that he was not biased or prejudiced and had no opinion as to the merits of the case. The court, in holding that the trial court was in error, in its opinion said: " * * * A fair and impartial trial by a fair and impartial jury is what the law exacts, and this requirement becomes a delusion if men with bias or prejudice or preconceived ideas of the rights of one are allowed to sit in judgment on his case. Hughes v. State, Tex.Cr.App., 60 S.W. 562, 565. The facts show that counsel for the appellants were misled into the belief that the juror was fair and impartial, and they did all that could be done to obtain from him the facts, and only learned the truth after the trial. We feel sure that the learned trial judge would have allowed the challenge to the juror if he had told upon his examination the facts that were developed on

the motion for new trial. Consequently we are of opinion that these assignments present reversible error, for which the judgment must be reversed."

While the Texas courts have not spoken precisely upon the facts here involved, except by way of analogy, insofar as we have been able to ascertain, there are cases from other jurisdictions which are in point upon the factual situation here existing, which we think set forth the only proper and safe rule that can be followed.

In the case of Pearcy v. Michigan Mutual Life Ins. Co., 111 Ind. 59, 12 N.E. 98, 99, 60 Am.Rep. 673, the court in its opinion announced the rule that: "The examination of a juror on his voir dire has a two-fold purpose, namely, to ascertain whether a cause for challenge exists, and to ascertain whether it is wise and expedient to exercise the right of peremptory challenge given to parties by the law. It is often important that a party should know the relation of a person called as a juror to his adversary, in order that he may interpose a challenge for cause, or exercise his peremptory right to challenge. It is the duty of a juror to make full and truthful answers to such questions as are asked him, neither falsely stating any fact, nor concealing any material matter, since full knowledge of all material and relevant matters is essential to the fair and just exercise of the right to challenge either peremptorily or for cause. A juror who falsely misrepresents his interest or situation, or conceals a material fact relevant to the controversy, is guilty of misconduct, and such misconduct is prejudicial to the party, for it impairs his right to challenge. In this instance, the appellant had a right to a full and truthful answer from Bowman, and it was his duty to make that answer without evasion, equivocation, or concealment."

Another leading case bearing upon this subject is the case of Shulinsky v. Boston & M. R. R., 83 N.H. 86, 139 A. 189, 191. One of the jurors in that case had had some dealings with the plaintiff, but on voir dire examination, though asked, he remained silent and concealed his business relations with the plaintiff. The trial court refused to grant a new trial and the Supreme Court, in holding that a new trial should have been granted, said:

"* * * if by reason of false information furnished under the court's authority and in organizing the jury, a peremptory challenge as to a prospective juror is not exercised, the party having the right of challenge is as effectively deprived of his right as though the rights were denied. * * * False information thus obtained and relied on is as destructive of a fairly constituted jury in its application to a peremptory challenge as to a challenge for cause. * * *

"Argument that a finding that the trial was fair is not pertinent. The question is whether a proper tribunal was established, and not whether an improperly established tribunal acted fairly. * * *

"If due diligence has been used and there is no waiver of rights, the fact that a juror disqualified either on principal cause or to the favor has served on a panel is sufficient ground for setting aside the verdict, without affirmatively showing that the fact accounts for the verdict. The trial is unfair because the jury is improperly constituted. * * * Nor is there any force in argument that the information although false was unintentionally so, and that there was therefore no bad faith. The harm lies in the falsity of the information, regardless of the knowledge of its falsity on the part of the informant. * * *

"* * * The facts here appearing that false information was given as an incident relating to the trial and that it was relied upon without lack of due diligence, the right to a new trial follows as a matter of law."

Under our jury system the parties to a suit may exercise their peremptory challenge in selecting a jury with adequate information concerning the prejudices, bias, point of view, and qualifications of the respective jurors on the panel. To permit a juror to conceal information that would affect the right of the attorneys trying the case in exercising their peremptory challenge would destroy the right of trial by a statutory jury.

There is no dispute in this action that the information concealed by the ju-

ror was material in so far as the appellant was concerned. Under the weight of authority, the mere fact that the juror did not act in bad faith is not the question to be determined in a case of this character. The question is whether a proper tribunal was established, and not whether an improperly established tribunal acted fairly. While it would be difficult, if not impossible, to measure with any degree of certainty the effect the claims Fairchild had had against the appellant as a workmen's compensation claimant had had upon his state of mind, or in what way it might have affected him as a juror, however since this uncertainty exists, we think that it is the duty of this court under authorities cited to reverse and remand this case for a new trial based upon this point.

We have carefully considered all other points raised by appellant and find no other reversible errors.

Reversed and remanded.