**ATKINSON et al. v. UNITED STATES FIDELITY & GUARANTY CO.**

No. 12156.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 25, 1950.

Rehearing Denied Dec. 6, 1950.

Second Rehearing Denied Jan. 10, 1951.

Sharpe, Cunningham & Garza, Brownsville, for appellants.

510

Taylor, Cox, Wagner & Adams, Brownsville, for appellee.

NORVELL, Justice.

This is a Workmen's Compensation case. Plaintiffs below and appellants here are the widow and children of Federico Atkinson who was an employee of Pan Am Foods, Inc. Appellee is the insurance carrier. After appellants had completed the introduction of their evidence, appellee moved for an instructed verdict which was overruled by the court. However, after the case was completed, a second motion for a peremptory instruction was made renewing the grounds set forth in the first motion and adding certain additional ones. This motion was granted by the court and judgment rendered accordingly.

█ The case is before us upon the point that the court below erred in granting the motion for an instructed verdict. The issues involved in this appeal are set forth from appellee's standpoint by its counter-points, wherein it is asserted that (a) there is no evidence of an accidental injury to the physical structure of the body suffered by the decedent, Federico Atkinson, and (b) that there is no evidence of a causal connection between an accidental injury and disease resulting in death. In this State, a mere scintilla of evidence is regarded as "no evidence". Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

Appellants' claim is not based upon the 1947 amendment to the Workmen's Compensation Act, Acts 1947, 50th Leg. p. 176, ch. 113, Article 8306, § 20, relating to occupational diseases, but rests upon the theory that Atkinson died of Addison's disease which naturally resulted from damage or harm to the physical structure of the body occasioned by stress, nervous strain, exposure and inhalation of ammonia gas, undergone by him during the course of his employment by Pan Am Foods, Inc.

█ The case can best be discussed by considering appellee's counter-points. We consider first appellee's contention that there is no evidence that Atkinson suffered an accidental injury to the physical structure of the body. Statements of the evidence are made in accordance with the rule that the testimony must be viewed in the light most favorable to appellant; that conflicts must be disregarded and every reasonable intendment indulged in favor of the losing party below. Le Master v. Ft. Worth Transit Co., 138 Tex. 512, 160 S.W. 2d 224; Happ v. Happ, Tex.Civ.App., 160 S.W.2d 227.

Federico Atkinson died about the middle of December, 1948, and according to appellant Olivia Flores Atkinson, her husband prior to October 19, 1948, was in good health, a "powerful man", thirty-two years of age, who had been sick in bed only one time since their marriage in 1938. He was employed by Pan Am Foods, Inc., which was engaged in processing foodstuffs by freezing them. Her husband worked a twelve-hour shift and after he had returned home from work about midnight, his foreman called him back to the plant to repair a fan. It was shown that the processing plant of the employing company had freezing units which were maintained at low temperatures. Atkinson left for the plant about 1:00 a. m., and when he returned home about four o'clock in the morning, he was violently ill. Mrs. Atkinson testified that he had vomited in the automobile he was driving and complained that his legs hurt him terribly and he had pains in his chest. Atkinson was extremely nauseated and both his body and his expelled vomit carried a strong odor of ammonia, which was used in substantial quantities in the freezing processes carried on at the Pan Am plant.

Mrs. Atkinson also testified that her husband, in explanation of his illness, stated that he had gone into a freezer unit and stayed for ten or fifteen minutes, "that he had inhaled a lot of gas and that was why he was sick." This last statement was finally admitted in evidence as a res gestae declaration over the objection of appellee. Dr. Vidal Longoria, who attended the deceased during his last illness, testified, apparently without objection, that Atkinson told him that he thought the fact he had inhaled ammonia gas caused him to vomit.

■ There is a preliminary question raised as to the admissibility of the declaration of deceased that he had inhaled ammonia gas. It is said in the briefs that the trial court admitted the statement on authority of Texas Employers Ins. Ass'n v. Wade, Tex.Civ.App., 197 S.W.2d 203. We think that the Wade case supports the trial judge's ruling. The opinion in the cited case and the opinion in Texas Employers Ins. Ass'n v. Shifflette, Tex.Civ.App., 91 S.W.2d 787, contain discussions of the res gestae rule as applied to situations similar to that involved here. These discussions need not be repeated. It is sufficient to say that the evidence shows that the declarant, whose death took place within two months, was in extreme physical and mental distress at the time the statement was made. Atkinson's declaration could properly be considered as an undesigned circumstance which was part of an occurrence related to his consequential death. The matter was one addressed to the discretion of the trial court and that court did not exceed its authority in admitting the statement. It follows that, in passing upon the point at issue, the declaration cannot be disregarded as having no probative force.

While the evidence shows that Atkinson was called back to the plant because a fan had failed to function properly in the freezing unit, there is no showing that this fact or any other occurrence caused an unusual amount of ammonia gas to be present in or about the room or cell where Atkinson had to work. Apparently some ammonia gas in varying quantities is always present in these chambers. It is contended by appellee that as there was no showing of a breakage of ammonia pipes or some similar occurrence, there is no showing of accident. In Texas Employers' Ins. Ass'n v. Wade, Tex.Civ.App., 197 S.W.2d 203, heretofore referred to, it was held that a showing that the deceased had inhaled chlorine gas which produced bronchial pneumonia supported a finding of "injury" as that term is defined in the Workmen's Compensation Act. The evidence disclosed that deceased was employed in a chemical plant and that the day he became sick the chlorine gas in the plant was unusually strong.

There was, however, no showing of an occurrence such as an explosion or a breakage of pipes or something similar thereto that would account for this condition. The authority primarily relied upon in the Wade case is that of Maryland Casualty Co. v. Rogers, Tex.Civ.App., 86 S.W.2d 867, 870, wherein it appears that death resulted from pneumonia allegedly caused by breathing dust from higera which was being ground in a hammer-type mill.

In the Rogers case Mr. Justice Martin, speaking for the Amarillo Court, said:

"Was such injury accidental? We quote: 'In discussing the construction to be given to the word "accident", as used in compensation statutes as denoting the kind of injury for which compensation may be had it has been said that no formula will precisely express the usage of the word cases, and that the word "accident", generally, does not have a settled legal meaning nor may the meaning of the word as generally used in the compensation statutes be determined by any dictionary definition alone but as used in those acts the meaning of the word "accident" is influenced by the provisions of the statute in which it is used as well as by the purpose for which the statute was enacted.' 71 C.J. p. 563.

" 'The word "accident," as used in a compensation act requiring the injury compensated for to be by "accident," is usually held to be employed in its ordinary sense as meaning an unlooked-for and untoward event which is not expected or designed.' 71 C.J. p. 566.

" 'By the term "injury" is meant, not only an injury the means or cause of which is an accident, but also an injury which is itself an accident.' Carroll v. Industrial Commission, 69 Colo. 473, 195 P. 1097, 1098, 19 A.L.R. 107. * * *

"In our opinion, however, the evidence was sufficient to meet its requirements and justify the finding made by the jury. True, the cause of the injury here was not purely an accident as if the roof had fallen in, etc. Such a narrow construction is at variance with the wholesome purpose of the law. If the injury was undesigned and unexpected, had its 'origin in a risk con-

nected with the employment,' and is shown to have flowed immediately and directly from that source as a rational consequence, it is compensable. There may be compensable cases not covered by the above rule. It is not intended to be all-inclusive."

■ While it was shown that the higera was extremely dirty, this unusual condition was not the only one relied upon as sustaining a finding of accident, i. e., to show that the injury was undesigned and unexpected. It was pointed out that there was a mild epidemic of pneumonia in the neighborhood. In our opinion, the presence or absence of an "unusual" amount of gas in the freezing unit should not be made the sole criterion of the existence of an accident. There were other unusual circumstances attendant upon the job Atkinson performed immediately before he was taken violently ill, such as the time of the night, the cold within the freezing unit, the presence of ammonia gas, even though not in quantities that could be described as unusual, and the fact that he was called back after midnight to do three more hours of work repairing broken machinery after already performing his usual twelve hours' work for that day. We think the evidence sufficient to support a finding of accidental injury to the physical structure of the body. The immediate injury was to the inner parts of the body and in most cases symptoms must be relied upon to establish damage to an internal organ. Atkinson's condition upon arrival at his house, his violent vomiting and pain, coming immediately after the exposure above described, raise a reasonable inference of injury. Article 8306, § 20, Vernon's Ann.Civ.Stats.; Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581; Texas Employers' Ins. Ass'n v. Wade, Tex.Civ.App., 197 S.W.2d 203; Standard Accident Ins. Co. v. Andreason, Tex.Civ.App., 183 S.W.2d 581; Texas Employers Ins. Ass'n v. Shifflette, Tex.Civ. App., 91 S.W.2d 787; Texas Employers Ins. Ass'n v. Jimenez, Tex.Civ.App., 267 S. W. 752.

We next consider appellee's contention that there is no evidence of a causal connection between an accidental injury and Atkinson's death.

■ Upon this point, we have examined the statement of facts in some detail. The necessary showing of causal connection depends to a large extent upon the testimony of Dr. Vidal Longoria, a medical expert who testified for appellants. In a number of important and salient details his testimony was contradicted by three other doctors, who testified for the appellee, for, as above pointed out, the motion for peremptory instruction was not granted until after both sides had rested. However, the weight to be given conflicting expert testimony is a matter for a jury.

According to Dr. Longoria, Atkinson died of Addison's disease approximately two months after October 19, 1948. This diagnosis is accepted by appellee for the purpose of this appeal, although no autopsy was performed and there is some evidence to the effect that a post-mortem examination would be necessary to definitely ascertain the cause of death. Addison's disease is one which affects the adrenal glands which are located over the kidneys. The function of these glands is "to sustain and maintain the blood volume and blood pressure, and the muscle tone." When the glands become diseased, an "imbalance of the sodium chloride and potassium in the body" results. The blood is primarily affected. The disease is "characterized by marked weakness, vomiting, hyphemia, marked muscular weakness, prostration, and sometimes pains in the abdominal area, pains in the legs and arms, and the last stages of the disease is characterized by a brownish pigmentation of the skin."

Dr. Longoria testified that Addison's disease was very rare, that the causes of the disease were tuberculosis, syphilis, atrophy or degeneration of the glands, trauma or some injury from the outside, and that strain or exposure or chemical poisoning could account for the degeneration of the glands; that he had examined Atkinson for tuberculosis and syphilis and found that he suffered from neither disease.

As to atrophy of the glands and chemical poisoning, Dr. Longoria testified as follows:

"Q. Now, going back to this atrophy thing you testified about; at first it was be-

lieved that tuberculosis accounted for the majority of the cases of Addison's Disease? A. That's right.

"Q. And atrophy was second? A. That's right.

"Q. And on down the line, including poisoning? A. That's right.

"Q. Are you familiar with ammonia gas? A. Well, I know of it; I don't know the chemicals of it.

"Q. Ammonia gas, if a person inhaled ammonia gas, what happens to him, what does it do to you? A. In the first place, it causes an irritation of the bronchial tubes.

"Q. What else? A. It might go into the blood stream, cause poisoning by entry through the blood.

"Q. If a person inhaled ammonia gas, can it get into your blood stream? A. Yes, sir.

"Q. And if a person inhaled ammonia gas, can it get into the adrenal glands? A. Oh, yes.

"Q. And your testimony is that poisoning can cause Addison's Disease? A. That's right.

"Q. Chemical poisoning? A. Chemical poisoning.

"Q. And ammonia gas is a chemical? A. That's right."

Dr. Longoria further testified as follows:

"Q. Now, I am going to ask you this, doctor, If a man comes home from work at twelve o'clock midnight, and at one o'clock in the morning, he returns to his work, and he enters into a cold storage room, and while in there inhales ammonia gas, could that cause him to get Addison's Disease? A. In my opinion, yes, it will have its beginning there.

\* \* \* \* \* \*

"Q. Now, in view of the subjective symptoms and the objective symptoms in your treatment of Federico Atkinson, did the fact that he had entered into a cold storage room and inhaled this ammonia gas, and was exposed to cold temperatures while he was under a strain, cause him to

get Addison's Disease and to die from it? A. It could do two things; it could cause it or incite it or make it worse.

"Q. In other words, if he did have that disease it could be detrimental \* \* \* A. If he had it, it brought it out; if he didn't have it, it could have caused it.

\* \* \* \* \* \*

"Q. From your observation of the objective and subjective symptoms that you observed and found out in treating Federico Atkinson, could his case of Addison's Disease have been caused by any other thing other than exposure, nervous strain, and the inhalation of ammonia gas? A. I don't know of any other cause, \* \* \* as far as this patient is concerned.

"Q. As far as Federico Atkinson is concerned, what, from your objective and subjective symptoms, and diagnosis of his case, what do you think caused him to get Addison's disease? \* \* \* Well, from your examination of Federico Atkinson, what caused him to get Addison's disease? A. Well, I believe that in this particular case it probably—it is a possibility that the origin was incited through strain and stress and exposure—cold exposure."

■ It is our opinion that a jury under the evidence could reasonably conclude that there was a casual connection between the exposure suffered by Federico Atkinson on the morning of October 19, 1948, and the development of Addison's disease, from which he died on December 15, 1948. Dr. Longoria testified that such exposure could cause the disease or incite it or make it worse. He then testified that, insofar as Federico Atkinson was concerned, he knew of no other cause of the disease.

■ It is urged that because Dr. Longoria at one point testified that, "it is a *possibility* that the origin (of the disease) was incited through strain and stress and exposure," this case comes within the rule that something more than a showing of mere "possibility" is necessary to establish a finding of causal connection. Houston Fire & Casualty Ins. Co. v. Biber, Tex.Civ.App., 146 S.W.2d 442. In determining whether or not a showing of mere

possibility and no more has been made, all of the pertinent evidence on the point must be considered. The fact that an expert medical witness, in speaking of cause and effect uses such expressions as "might cause", "could cause", "could possibly cause", or phrases similar thereto does not preclude a jury finding of casual connection, provided there be other supplementary evidence supporting the conclusion. Causal connection is generally a matter of inference, and possibilities may often play a proper and important part in the argument which establishes the existence of such relationship. It is well settled that the medical expert in testifying as to a present or past physical condition, may express his opinion as to causal relationship in terms of possibility.

In Galveston, H. & S. A. Ry. Co. v. Harris, Tex.Civ.App., 172 S.W. 1129, 1132, this Court, in discussing the matter, said: "The substance, it seems, of the objections to this testimony is that the expert says traumatism or shock *could* produce the mastoid trouble, and does not show that it probably would do so; in short, that it is a mere possibility, not a probability. The witness does not use the word 'probable' in connection with his testimony on this point, but he does say that mastoid trouble could result from shock or traumatism, and then proceeds in detail to show the connection between the traumatism or shock and the resultant effects as pertaining to mastoid trouble and how it occurs. We think that, *on the whole,* Dr. Berry's testimony shows that the mastoid trouble did probably result from the injury or traumatism at the time same occurred." (Italics ours.)

In this case, the testimony adduced by appellants, when given full credence, shows that prior to October 19, 1948, Federico Atkinson was a person of robust health. In less than two months thereafter he died of Addison's disease. The end of a long period of good health and the beginning of a period of bad health, culminating in death, was marked by the events of the morning of October 19, 1948. When we look at the evidence in the light most favorable to appellants, it is no exaggeration to say that Atkinson left his home at one o'clock in the morning, a well man in good health. He returned at four o'clock, a sick and dying man. Tuberculosis, the most common cause of Addison's disease, according to the medical testimony, and syphilis, another recognized cause, were eliminated from consideration. Dr. Longoria testified that Addison's disease could be brought about by chemical poisoning and that ammonia is a chemical which could reach the blood stream by being taken into the lungs. He also testified that stress, strain and exposure could aid in initiating the disease or causing it to become active. While his testimony was contradicted upon certain of these points, we are required to accept it as true for the purpose of this appeal. We hold that the case was one for the jury and that the trial court erred in giving a peremptory instruction. In our opinion, the following authorities support our position: Commercial Standard Ins. Co. v. Davis, 134 Tex. 487, 137 S.W.2d 1; Texas Employers Ins. Ass'n v. Wade, Tex.Civ.App., 197 S.W.2d 203; Standard Accident Co. v. Andreason, Tex.Civ.App., 183 S.W.2d 581; Maryland Casualty Co. v. Rogers, Tex.Civ.App., 86 S.W.2d 867; Texas Employers Ins. Ass'n v. Jimenez, Tex.Civ.App., 267 S.W. 752; Travelers' Ins. Co. v. Smith, Tex.Civ.App., 266 S.W. 574; 45 Tex.Jur. 475, § 82.

Appellants' point is sustained. The judgment is reversed and the cause remanded.