**TEXAS EMPLOYERS' INSURANCE ASS'N,**
**Appellant,**

v.

**Susie WILLIAMS, Appellee.**

**No. 6919.**

Court of Civil Appeals of Texas.

Texarkana.

Dec. 27, 1956.

Royston & Rayzor, Mayo J. Thompson, Houston, for appellant.

Mandell & Wright, Arthur J. Mandell, Houston, for appellee.

DAVIS, Justice.

John Williams, deceased, sustained an injury to his right ankle on October 9, 1953, while working as a longshoreman for the Southern Stevedoring & Contracting Company, the assured of the appellant, Texas Employers' Insurance Ass'n. Although the skin was not broken, nor fractures or dislocations discovered, there was much swelling and tenderness in the area of the injury. Williams was a bed patient from the date of the injury to the date of his death on De ꞏmber 7, 1953, except for trips to the hospi..̇ for treatment and to the office of app...lant on a few occasions to pick up his compensation checks. He moved about with the aid of crutches until about October 27, 1953, when he appeared to be getting along very well and was able to walk without them. On October 27, 1953, Williams was seized with convulsions and was rushed to the hospital where he was attended by his family physician at St. Elizabeth's Hospital in Houston. At the time he was admitted to the hospital the doctor made the following notation:

"10/27/53 Patient admitted to hospital in coma, given routine care for cerebral hemorrhage."

He was discharged on November 8, 1953. He was again admitted to the hospital on December 3, 1953, for a convulsive seizure at which time the attending physician made the following notation:

"12/3/53 Patient is an exact picture of his previous admission, but the seizures are lighter. He is easier to subdue and relax. My impression is that he has had a recurrent hemorrhage of a ruptured sub-arachnoid vessel, or an aneurysm. There is a possibility, of course, of a cerebral embolus from a thrombus in the right ankle. Also he. could have a lesion of lung with metastasis to brain."

He was discharged from the hospital the second time at 2:00 P.M. on December 7, 1953. He was re-admitted at 10:45 P.M. the same date with the third convulsive seizure and died shortly thereafter. A death certificate was signed by the attending physician showing the cause of death as "undetermined." An autopsy was performed on December 8, 1953, by Dr. W. W. Coulter, an eminent pathologist, and the autopsy protocol lists a number of autopsy diagnoses, but the record does not reveal the date the diagnosis was recorded.

After the usual routine of claim before the Industrial Accident Board by Susie Williams, widow of John Williams, deceased, and appeal to the District Court, the case was tried to a jury. Upon allega-

tion and proof, the jury found that the accidental injury sustained by Williams on October 9, 1953, was a producing cause of his death, and answered all other special issues, both affirmative and defensive, in favor of appellee. Judgment was entered accordingly and the insurer has appealed.

By Points 1 and 2, appellant complains of the action of the trial court in refusing to enter judgment for appellant upon motion for directed verdict and on motion for judgment non obstante veredicto contending that: (1) There was no evidence to establish that the deceased had received an accidental injury which was the producing cause of death; and (2) the evidence was insufficient to establish that the deceased received an accidental injury which was a producing cause of death. The fact that Williams sustained an injury in the course of his employment is admitted. The questions are: (1) Is there any evidence of probative value that the injury was a producing cause of the death of Williams? and (2) if there is any evidence of probative value that the injury was a producing cause of death, is the evidence sufficient to sustain the jury verdict? It is the contention of appellee that a thrombus (blood-clot) was caused by the injury. That as the result of the thrombus, a pulmonary embolus (a breaking away of the blood-clot, or a part thereof, into the blood stream) was produced, passed through the heart and lodged in the pulmonary artery in the lower left lung, which caused the death of Williams.

It is not seriously denied that the pulmonary infarction caused the death of Williams, although appellant contends that other matters could have contributed to or caused his death, or possibly could have been the producing cause of his death. Actually, appellant's Points 1 and 2 are without merit because there is an abundance of evidence to support the jury verdict. Appellee's witnesses Willis Barton, Reuben Wheatley and appellee all testified that Williams was in constant severe pain from the time of the injury until the time of his death as the direct result of the injury. It is undisputed that there was visible evidence of the injury from the date of the injury until his death. To demonstrate our finding that there is an abundance of evidence to support the jury verdict, we quote some of the testimony.

Dr. Coulter, the pathologist who made the autopsy, witness for appellee, testified as follows:

"Q. Now, doctor, after you made the autopsy, did you yourself arrive from your knowledge and experience as a pathologist what in all reasonable probability was John Williams' cause of death? A. Pulmonary infarction.

\* \* \* \* \* \*

"Q. In view of the history I have given you (about the injury) from where, in your opinion, would that pulmonary emboli come? A. It always comes from an injury.

"Q. In view of the fact that having a history of an injury here on October 9, 1953, to the ankle, can you tell this jury what, in your opinion, is the causal connection between the injury and the pulmonary emboli that caused this infarction? A. I think the injury caused the infarction.

Then the doctor explained in detail how the thrombosis occurred, passed into the blood stream and finally lodged in the lung. He then testified:

"Q. Now, then, doctor, it is therefore your testimony that in your opinion the injury on October 9th caused a thrombosis or clot or something in the leg which finally worked its way up to the lung and killed the man? A. The most probable cause of it is an injury.

\* \* \* \* \* \*

"Q. Therefore your opinion which you gave today that the injury of Oc-

tober 9th produced thrombosis which finally produced pulmonary infarction which brought on his death was given as an expert pathologist? A. Yes, sir.

"Q. That is your opinion? A. That is my opinion."

Similar testimony was repeated by Dr. Coulter several times on direct and cross-examination.

Dr. Ralph Eichhorn, witness for appellee, basing his testimony upon the diagnosis of the pathologist, Dr. Coulter, the history of the injury, and hypothetical questions, testified very positively that in his opinion the injury was the producing cause of death.

Dr. John James Bunting, witness for appellant, testified on cross-examination, in part, as follows:

"Q. That pathologist (speaking of Dr. Coulter) arrived at his opinion on his experience and knowledge plus what he himself has seen, that is true, isn't it? A. Yes, sir.

"Q. So it becomes a question whether to rely upon the expert who has been there and took a look-see, or the one who read the brief report, isn't that true? A. Yes, sir, that is true."

Then testifying as to the relative three convulsive attacks, Dr. Bunting testified:

"Q. Then, it is classical, is it not, in many instances reported by the medical books, that you have got a situation where you have one embolus running from whatever the injury was, getting to the heart and then to the lung, but the patient gets over it, with some severe action, but he gets over it? A. Very often.

"Q. Then you have a second one, and the patient gets over it? A. That is true.

"Q. Then you have got a third one and the patient dies because of it?

A. In five out of six times, that is true.

*  *  *  *  *  *

"Q. Can it be, Doctor, in view of this man's condition, a contributing cause of his death? A. I think it can be a contributing factor.

*  *  *  *  *  *

"Q. If that is correct, then if the thrombosis from the phlebo-thrombosis broke off and went into the bloodstream and down and caused the pulmonary infarct, you would agree with me then that the pulmonary infarct was a contributing cause of his death? A. Yes, sir."

The doctor then testified that lying in bed would be conducive to the breaking off of the thrombus and the flowing into the bloodstream. He then testified:

"Q. Regardless of what percentage, whether it played a minor role or not, it did play a role? A. It could.

"Q. From the facts I have given you here, would you say that in all probability that the role it played was a producing cause? A. There are so many other factors that on autopsies it is often found difficult to enumerate them all and say they all would be a contributing factor, *but in this instance, I will have to go along with you, in all fairness, and say that is true."* (Emphasis supplied.)

We think the evidence in this case is much stronger than the evidence in the case of Texas State Highway Dept v. Butler, Tex.Civ.App., 158 S.W.2d 878, writ ref. w/o/m; and Globe Indemnity Co. v. Matthews, 5 Cir., 131 F.2d 433, the Matthews case being direct in point. Other cases supporting our finding are: Atkinson v. U. S. Fidelity & Guaranty Co., Tex.Civ. App., 235 S.W.2d 509, writ ref., N.R.E.; Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345; Texas Employers Ins. Ass'n v. Wade, Tex.Civ.App., 197

S.W.2d 203, writ ref., N.R.E.; Traders & General Ins. Co. v. Jaques, Tex.Civ.App., 131 S.W.2d 133, writ dism. judgm. cor.; Texas Employers Ins. Ass'n v. Lovett, Tex. Civ.App., 19 S.W.2d 397, writ ref., Norwich Union Indemnity Co. v. Smith, Tex. Civ.App., 12 S.W.2d 558; Parish v. Pacific Indemnity Co., 5 Cir., 221 F.2d 483; Strawn v. Travelers Ins. Co., 5 Cir., 200 F.2d 778. Points 1 and 2 are overruled.

Appellant's Points 3, 4 and 5 are multifarious and will not be discussed. To demonstrate what we mean, we quote the third point as follows:

"The court erred in refusing to sustain Appellant's timely motion for judgment notwithstanding the verdict and in entering judgment for Appellee and in failing to grant Appellant a new trial because the jury's answer to Special Issue No. 1 that John Williams received an accidental injury on October 9, 1953, which was a producing cause of his death on or about December 7, 1953, was:

"(a) Without support in the evidence;

"(b) Unsupported by sufficient evidence;

"(c) Against the overwhelming weight and preponderance of the evidence;

"(d) Based upon conjecture, speculation, surmise or suspicion; or

"(e) Violated the principle of law prohibiting the piling of presumptions upon presumptions and the superimposing of inferences upon inferences."

Although, we have examined the record in the light of each of the several issues raised by each of the three points, found them to be without merit, and they are respectfully overruled.

Finding no error in the record, the judgment of the trial court is affirmed.